MARION v. THE CHICAGO ROCK ISLAND & PACIFIC R'Y CO.

1. **Railroads:** LIABILITY FOR TORT OF BRAKEMAN IN REMOVING TRESPASSER FROM TRAIN. Under section 1307 of the Code, a railroad company is liable for the tort of a brakeman committed in removing a trespasser from a train, whether the wrongful act be merely one of negligence, or a willful and criminal wrong.

2. ———: TORT OF BRAKEMAN: EVIDENCE OF LANGUAGE USED. Where a brakeman was guilty of a tort in removing a trespasser from a train, it was competent, in an action against the company, to prove what the brakeman said at the time, as a part of the *res gestæ*, not to establish his authority, but to show his intention.

3. **Evidence:** OBJECTION OF INCOMPETENCY, ETC. If evidence offered is competent, relevant or material for any purpose it should be admitted,

though objected to in general as incompetent, irrelevant and immaterial. In such cases the objectiom should be more specific.

4. **Railroads:** AUTHORITY OF BRAKEMAN TO EJECT TRESPASSERS FROM TRAINS: EVIDENCE. The testimony of one who had for fourteen years been in defendant's employment as fireman, engineer, brakeman and conductor, and who, at the time of the injury complained of, was a conductor on the branch of defendant's road where the injury occurred, to the effect that brakemen were subject to the orders of the conductors, and that the conductors' orders to their brakemen were to eject trespassers from the trains, and that such were the orders of the conductor to the brakeman who did the wrong complained of, was competent to show the authority of the brakeman to remove a trespasser from the train;—and so was the testimony of other witnesses to the effect that they had many times seen brakemen eject trespassers from trains.

5. **Practice:** INSTRUCTIONS: REFERRING JURY TO PLEADINGS. While the court may not refer the jury to the pleadings to ascertain the issues in a case, it is not error thus to refer to a narration of facts therein contained.

6. **Railroads:** PERSONAL INJURY BY TORT OF BRAKEMAN: EXCESSIVE DAMAGES. A verdict for $7,000 in favor of one injured in being brutally and cruelly removed from a train, as the plaintiff was injured in this case, (see opinion,) *held* not excessive.

*Appeal from Keokuk District Court.*

WEDNESDAY, OCTOBER 22.

THIS is an action to recover damages for a personal injury, received by the plaintiff by being forcibly removed from a railroad train by a brakeman in the employ of the defendant. There was a trial by jury, and a verdict and judgment for the plaintiff. Defendant appeals.

*M. A. Low*, for appellant.

*McCoid, Brighton & Jacques, H. N. West* and *Sampson & Brown*, for appellee.

ROTHROCK, CH. J.—I. It is averred in the petition that, as a freight train of the defendant was passing through the

1. RAIL-
ROADS: lia-
bility for tort
of brakeman
in removing
trespasser
from train.

city of Fairfield, the plaintiff, without the consent of the company, and without a ticket, and while the train was in motion, got upon the train by climbing upon the iron ladder upon the side of a box freight car.

"That after he had gotten upon said car, and before he had succeeded in climbing on top, the speed of the train increased, and it passed where it was dangerous to life and limb for him to leave it; and while in such position on the ladder of the freight car, and well knowing that he could have climbed upon the car, remained where he was, or gotten off, had the train stopped or slackened up at some less dangerous place, in safety, the brakeman on said train, in the course of his employment, ordered him off, and when he failed to get off, because of the great danger to his life, while pleading for his life, pushed him and cruelly and inhumanly tramped upon his hand and fingers, and negligently, willfully and criminally forced him, without fault on his part, from the car, causing him to fall therefrom through Crow creek bridge, a great hight, breaking his thigh in two places, bruising and cutting his body in different places, etc. That the brakeman was, in the line of his duty, authorized to put plaintiff off the train."

The defendant objected to any evidence in support of the allegations of the petition, because it appeared from the same that the defendant was not liable, in that it did not show that the brakeman charged with ejecting the plaintiff had authority to do so, and that, if the allegations of the petition are true, the brakeman was guilty of a felonious assault, for which the defendant would not be liable.

And the defendant asked the court to instruct the jury as follows:

"6. If the jury find from the evidence that the brakeman willfully and maliciously, intending thereby to inflict great bodily harm upon plaintiff, kicked or pushed plaintiff from the car while it was moving at a rapid rate of speed, causing the injuries complained of, they must find for the defendant."

These two propositions, that is, the overruling of the motion to exclude the evidence, and the refusal to give the above instruction, present substantially the same question, and they may properly be examined together. And for the purposes of this examination it will be assumed that the brakeman was authorized to remove persons from the train who sought to take passage thereon without tickets, or who, for any reason, had no right to go on the train or remain thereon.

It is claimed by counsel for appellant that, if the petition and plaintiff's testimony be true, the assault was felonious, and was an act wholly without the scope of the brakeman's authority. A large number of cases are cited upon the question as to the liability of a master for a wanton, willful, and intentional wrong of his servant. Among the authorities which hold that the master is not liable in such cases are, *De Camp v. Mississippi & Missouri Railroad Company*, 12 Iowa, 348; *Cooke v. Illinois Central Railroad Company*, 30 Id., 202; *Cleveland v. Newsom*, 45 Mich., 62; *Fraser v. Freeman*, 43 N. Y., 566, and *Howe v. Newmarch*, 12 Allen, 49.

In the case of *McKinley v. The Chicago & Northwestern Railroad Company*, 44 Iowa, 314, *De Camp's* case and *Cooke's* case, above cited, were distinguished from *McKinley's* case, upon the ground that in the latter the injury was done to a passenger, while in the former it was done to live stock, respecting which the duty of the railroad company was entirely different. It is said, however, in that case: "If we were left to determine the question upon principle, whether an employer should be held liable for the willful or criminal acts of the employe done in the course of his employment, we should have very little or no hesitation in affirming such liability, and this because the employer has placed the employe in a position to do wrong, and, it being done in the course of his employment, the intent with which it was done should not affect the liability of the employer, whether the intent be good or ill. So long as he acts within the scope of his

employment, the employer should be bound. The decided weight and number of the authorities are in accord with this view."

McKinley's cause of action accrued to him on March 22, 1872. In April of the same year, the legislature of this state passed an act which provided, "that every corporation and person owning and operating a railroad in this state shall be liable for all damages sustained by any person in consequence of the willful wrongs, whether of commission or omission, of their agents and employes, when such wrongs are in any manner connected with the use and operation of any railroad so owned or operated, on or about which they shall be employed."

The substance of this act was afterward incorporated into section 1307 of the Code. It will be seen that the cases of *De Camp v. R. R.* and *Cooke v. R. R.*, and *McKinley v. R. R.*, so far as it approves the two former cases, are no longer applicable under the laws of this state.

If, therefore, the brakeman in this case had authority to remove persons from trains, the defendant is liable for any willful wrong he may have done in removing the plaintiff, and it is wholly immaterial what motive he had, or with what malice the act was done. Indeed, in a former appeal in this case, we said "that, if the conductor had forced the plaintiff from the train while in motion, and while crossing a bridge, the act would very clearly, under the evidence, be deemed to be in the course of his employment, and that, too, even if it were shown that he had been expressly instructed to eject no person from the train when in motion, especially when crossing a place as dangerous as a bridge. In one sense, the specific act would not be in the course of his employment, but his general employment to remove trespassers from the train would be sufficient to render the company liable." So that, if the act which produce the injury be done in the course of the employment of the wrongdoer, the company is liable, whether

the act be merely one of negligence, or a willful and criminal wrong. Suppose that a conductor should have occasion to eject a person from a train for refusal to pay his fare, and should conceive that the better way to eject him would be first to disable him by knocking him down, and in doing so should kill him; surely the company would be liable, and it would be wholly immaterial, so far, at least, as compensatory damages are involved, whether the conductor was actuated by malice, or was guilty of murder or manslaughter.

II. The court permitted the plaintiff to testify, over the objection of the defendant, that he told the brakeman that he

2. ———: tort wanted to go to Perlee, and that he wanted to pay
of brakeman: him, and that the brakeman told him to get off,
evidence of
language and that he had orders to put him off. It is
used. claimed that this evidence was improperly admitted, because the authority of an agent cannot be shown by his declarations. These statements were made by the brakeman while ordering the plaintiff off the ladder, and immediately preceding the act of forcing him therefrom. They were part of the *res gestæ*—"verbal acts" accompanying the wrongful force com-

3. EVIDENCE: plained of by the plaintiff. They were com-
objection of petent evidence. In Greenleaf on Evidence,
incompe-
tency, etc. section 113, in treating of the declaration of
agents, it is said: "Whenever what he did is admissible in evidence, then it is competent to prove what he said about the act while he was doing it." It was competent for the purpose of showing that the brakeman intended to put the plaintiff off the car. It was not competent for the purpose of showing the authority of the brakeman to eject the plaintiff. But the record does not show that this specific objection was made to the testimony. It is true, the objection was made that it was "incompetent, irrelevant and immaterial." If it was competent, relevant or material for any purpose, the objection was properly overruled. If the attention of the court had been called to the specific objection by instructions

asked, or otherwise, there can be no doubt that the proper instruction would have been given. It is enough to say that the evidence was not improperly admitted.

III. Objection was made to the evidence introduced by the plaintiff upon the question of the authority of the brake-

4. RAILROADS: authority of brakeman to eject trespass-ers from trains : evi-dence. man to remove trespassers from freight trains. The plaintiff did not attempt to show such authority from any printed or written rules of the defendant. Indeed, it appears that there was no rule upon that subject, except the general rule that the conductor should have general charge and direction of his train. The brakemen are his assistants, subject to his orders, but there was no rule as to whether or not the conductor might delegate authority to his brakeman to eject passengers from the train. The plaintiff introduced one Welch as a witness. He had been in the employ of the defendant for fourteen years—ten years before the injury complained of, and four years afterwards. He had served as fireman, engineer, brakeman and conductor, and was a conductor on the branch of the road where the plaintiff was injured at the very time of the injury. He testified that the brakemen were subject to the orders of the conductors, and that the conduc-tors' orders to their brakemen were to eject trespassers from the trains. He even stated that such were the orders of the conductor of the train upon which this injury occurred. There was the testimony of other witnesses to the effect that they had many times seen brakemen eject trespassers from the trains. It is insisted that all of this evidence was incom-petent to show such authority in the brakeman, and that no one is intrusted with the duty but the conductors. We think the evidence was competent and proper. The conductor's general authority to manage and control the train and the trainmen would authorize him to give, at least, some general directions to his subordinates, as that a certain course should be pursued by those under his command upon the occurring of a certain event, and such general directions would be no

violation of any general rule introduced in evidence in this case. Of course, he could not delegate to one of his brakemen the control and management of a train. It is shown that the conductor's place, when the train is on the run between stations, is ordinarily in the caboose. The plaintiff attempted to climb upon a car near the engine, and near the brakeman's post of duty. Now, it would be absurd to hold that the rules of the company were so inflexible that the brakeman would be required to call the conductor, or get a special order from him, before proceeding to clear the train of the trespasser. We think all of the evidence upon this question was properly submitted to the jury.

IV. In the fourth instruction given by the court to the jury, they were directed that, if they were satisfied "by a preponderance of the evidence that the brakeman, McElroy, while acting within the scope of his employment, and for the purpose of removing plaintiff from the train, ejected or forced plaintiff from the car of the defendant in the manner and under the circumstances substantially as alleged in the substituted petition," etc.

5. PRACTICE: instructions: referring jury to pleadings.

This instruction is objected to because, it is said, it refers the jury to the pleadings to ascertain the issues. We think this is a mistaken view of the instruction. It does not refer the jury to the pleadings to ascertain anything but a narration of the facts therein contained. It was perfectly proper for that purpose. It imposed no duty upon the jury as to ascertaining the issues from the pleadings.

V. The court, among other instructions, gave the following: "5. If said brakeman had no authority to remove persons from the trains who were endeavoring to ride thereon without payment therefor and without consent, then defendant would not be liable, and you should so find; and if you find from the evidence, under the instructions hereinafter given, that said brakeman had authority to eject or remove persons who got upon the train as plaintiff did, and you further find that said brakeman

SAME as number 1, ante.

forced plaintiff from the car, not simply for the purpose of preventing him from riding on the train, but for the express and only purpose of gratifying his personal hatred or ill will toward plaintiff, and with the express design of taking his life or causing him great bodily harm, then and in such case plaintiff cannot recover, and your verdict should be for the defendant."

This instruction is objected to, because it is too emphatic a declaration of the law in favor of the plaintiff—that it was sufficient to exonerate the defendant from liability, if the brakeman was actuated by mere wantonness, intending to injure the plaintiff from the gratification to be derived by a brutal and depraved mind from such an act.

As we have before intimated, we do not think the malice of the agent or employe is a proper subject for consideration, and we believe the instruction was fully as favorable to the defendant as could properly be asked. If the act done was one within the scope of the authority of the brakeman, that is, if the brakeman had authority to remove trespassers from the train, and in so doing he did a willful, intentional wrong, we cannot see why the defendant should escape liability by claiming that the act was not only willfully wrong, but was malicious, and intended by the brakeman to gratify his brutal nature. The fact remains that all that was done was in pursuance of an effort to force the plaintiff off the train. If, in doing so, the brakeman had even murderous designs, it was, in the language of the statute, a "willful wrong," for which the defendant is liable.

VI. The verdict of the jury was for $7,000. It is claimed that it is excessive. We think otherwise. It is 6. RAILROADS: true, the plaintiff was a poor man, and his wages personal in- were small when he worked; but the injuries he jury by tort of brakeman: received were great. His thigh was fractured in excessive damages. two places below the joint, in such a manner as to endanger his life. He was much injured otherwise. It was six or eight months before he could walk. The injury appears

to be permanent. The injured thigh is considerably smaller, and is weaker and shorter than the other. He suffered great pain, and still suffers from his injuries. We are not prepared to say that the verdict is excessive.

We have determined every material question discussed by counsel for appellant, and are united in the conclusion that the judgment of the district court should be

AFFIRMED.