D. W. RAMM, Appellant, v. THE MINNEAPOLIS & ST.
PAUL RAILWAY COMPANY, W. H. TRUESDALE,
Receiver.

**Railroads:** EJECTING PASSENGER. Plaintiff was directed by the agent
to pay on the train. The caboose platform being crowded he
climbed a freight car, when a brakeman compelled him to get off
with an assault, refusing to stop the train. The passenger prom-
ised to buy a ticket at the first station. He managed to get into
the caboose and was then told by the conductor that it was the
brakeman's business to kick off tramps. *Held,* it was error to
direct a verdict for defendant.

*Appeal from Webster District Court.*—HON. N. B. HYATT,
Judge.

FRIDAY, APRIL 5, 1895.

Action to recover damages for being assaulted and
abused and compelled to get off a train on the defend-
ant's railroad. At the close of the introduction of the
evidence in behalf of the plaintiff the court, on motion,
instructed the jury to return a verdict for the defend-
ant. From a judgment on the verdict thus returned
the plaintiff appeals.—*Reversed.*

*J. C. Raymond* for appellant.

*R. M. Wright* for appellee.

Rothrock, J.—I. The petition is in the ordinary
form of a declaration for a personal injury. We do not
think it is necessary to set out the pleadings. The
issues will be understood by the evidence which we will
refer to, and by the discussion of the facts and ques-
tions of law involved in the case. The following is the

testimony in chief given by the plaintiff in the trial:
"Reside at Luverne, Kossuth county, Iowa, and have
lived there for the last ten years. Am a butcher and
dealer in live stock. Was at Humboldt about a year
ago, on the twenty-eighth or twenty-ninth of this
month. This road runs from Luverne to Humboldt.
Was subpœnaed as a witness with ten or twelve others.
About half past eight, or such a matter, went to the
depot at Humboldt, to take what is called the ten
o'clock freight for Luverne. It was an awful dark
night. Went to the ticket office to buy a ticket. Had
no change less than a ten dollar bill. Crowded up to
the ticket office. The agent was there. He had some
talk about a rebate ticket. What it was I didn't know.
Seemed to be about a ten-cent rebate ticket. Agent
kept that up quite a while. There was several people
asking for tickets. Laid the ten dollar bill on the
board there, and told him I would like a ticket for
Luverne. Left the bill laying there for a few minutes.
Then he said he had no time to make change; 'You pay
on the train.' Then I went out of doors. When I got
out doors there was quite a crowd on the platform. A
good many stood on the platform of the caboose. Had
been there the second day. We didn't get through the
first day of court, and we had to stay two days. The
conductor had hollered, 'All aboard,' and I thought I
would climb up on the ladder of the caboose, but I
believe it was the third car I climbed on. When I got
up there, the train was moving. After we had gone
fifty or sixty rods, the brakeman came along with a
lantern, and said, 'You get off of there.' Told him if he
would let me ride to Luverne I would get a ticket.
Couldn't get a ticket there, and the platform of the
caboose was crowded. 'Have you got any stuff?' he
asked. I said: 'Yes, I got some stuff, but I couldn't
get any ticket. I only got twenty cents in change.'

He went off in the direction of the caboose, and then comes toward me, and said: 'You son of a bitch, you get off here. You have been stealing a ride every night.' I told him it wasn't so. He said I had to get off. I told him I couldn't get off. I wasn't used to climbing off the cars. He said, 'You get off in a hurry, pretty quick.' I said, 'Slack up a little so I could get off.' He said they was going slow, and kicked me. I dodged around. He took the lantern, and knocked my hand off the ladder. I offered him a quarter, and begged him to let me ride to Luverne. He said I was stealing a ride every night, so he kept on, and kicked me right under the jaw here, and once on the head. I tried to dodge as much as possible, and begged to slack up the train a little, and let me off. He went back, and got another lantern. His lantern went out when he knocked my hat off. He came back, and found me again. I begged him to slack up a little, and let me off. I said, 'If you let me come up, when I get to Luverne I will get a ticket.' Didn't have anything but twenty-five cents, so he kept kicking at me, and tried to step on my fingers. Did step on them several times. Took the lantern and made a motion to strike. Just as he did that, the train commenced to run slow. He said that was as slow as they would go. I got down on the lower step, and told him I could not get off; he had to slack up a little more. He made a motion, and the train kind of run slower. Finally got down to the ground; partially fell; kept on my feet; fell along with the train. Then I caught the hind end of the caboose; climbed on that. Just about when I got on the caboose, and talked to the conductor about the brakeman, the brakeman came in a little afterward. I was in there. Told the conductor how the brakeman had treated me. I said I had money, but I didn't have the change, and couldn't get a ticket. He said the

brakeman had no business to take any money. His
business was to kick tramps off if they rode on cars.
Then I got a ticket from the conductor. The brakeman
stepped on my fingers, and kicked me under the jaw,
and once on the side of the head. The train, at the
time, was running pretty fast; too fast to get off. I
tried to get off. I begged him to let me stand on to
Luverne, so I could get a ticket or pay. I stepped one
foot on the ground to see how fast train was run-
ning. The brakeman stepped on my fingers. When I
went to the ticket office to get a ticket there was quite
a crowd there anxious to get tickets. Couldn't get
tickets because the agent had some kind of rebate
ticket, I believe. He wanted to find out the man who
beat him with that rebate ticket. Heard call out 'All
aboard!' twice before I went in to get ticket. When I
finally got off the train, train was running faster than
I liked to get off. When I finally got off, didn't quite
throw me down; stayed on my feet. When the caboose
came along, caught on; got on step of caboose." The
cross-examination of the plaintiff did not materially
vary the examination in chief. There are conflicting
abstracts, but a full examination of the record shows
that the plaintiff's examination in chief as above set
out presented questions of fact proper for the consid-
eration of the jury. His testimony as to what occurred
in the ticket office, relating to his effort to procure a
ticket, and the direction of the ticket agent to pay the
passage money on the train, is fully corroborated by
more than one witness, and the crowded condition of
the platform of the caboose is corroborated to some
extent. When the plaintiff entered the ticket office
and laid his money on the counter, and was told by the
agent to pay on the train, his relation to the defendant
was that of a passenger. *Allender v. Railway Co.*, 37

Iowa, 264. Did he forfeit that right, under the circum-
stances, by climbing up on the ladder of a freight car?
We think that was a question for the jury. And, even
if the jury should find that the relation of passenger
had ceased, that finding would not have been conclusive
of the case. In *Marion v. Railway Co.*, 64 Iowa, 574, it
was held that a railroad company was liable for the
tort of a brakeman committed in removing a trespasser
from a train, whether the wrongful act be merely one of
negligence or a willful and criminal wrong. Some
question is made whether there is any evidence that the
brakeman was authorized to eject passengers from the
train. The evidence of such authority was sufficient to
require that question to be submitted to the jury. Ref-
erence to the testimony above set out shows that what
occurred from the time the brakeman made the
assault up to the time the plaintiff paid his fare to the
conductor was all one transaction, and when the con-
ductor said that the business of the brakeman "was to
kick tramps off if they rode on the cars," such declara-
tion was part of the *res gestae*, and proper to be con-
sidered by the jury.

II. It appears from appellant's abstract that the
railroad was operated by a receiver, and that applica-
tion was made to the court for leave to commence the
action, and that the application was sustained. Appel-
lee presented a motion to strike from the abstract all
that part thereof relating to the application for per-
mission to bring the suit, because it is no part of the
record in this appeal. It is immaterial whether the
motion be sustained or overruled. No mention is made
of the application in the petition, and no issue is made
by the answer involving the right of the plaintiff to
commence and maintain the action, and that right does
not appear to have been questioned on the trial. The
judgment of the district court is *reversed*.