THE UNION PACIFIC RAILWAY COMPANY v. EDDIE MITCHELL, *by his Father, John C. Mitchell, as his Next Friend.*

### No. 7981.

1. CARRIER—*Ejection of Trespasser—Question for Jury.* Care must be taken in removing a trespasser from a moving railway-train not to expose him to serious injury, and whether such train is running too fast under the circumstances to admit of the exercise of the right of ejection is a question of fact to be submitted to the jury under proper instructions.

2. INSTRUCTION — *no Material Error.* In a suit brought by a trespasser to recover damages for personal injuries sustained by being pulled from a moving train, the court instructed the jury that if the defendant was guilty of wilful, wanton, malicious or reckless conduct in removing the plaintiff, and that he sustained the injuries complained of in consequence thereof, a recovery might be had against the defendant, and the court defined the meaning of reckless conduct as "an indifference to the rights of others; an indifference whether wrong is done or not," and again stated that the defendant could be held liable only "for injuries inflicted which were wilful, wanton, or malicious, or which were so grossly negligent as to amount to wantonness." *Held,* There was no material error in the instruction.

3. REMISSION OF DAMAGES—*New Trial.* In personal-injury and other damage cases, where the plaintiff obtains a verdict, and

there is nothing tending to show passion or prejudice of the jury, but the amount is larger than the trial court thinks properly allowable, the plaintiff may be required to elect to take judgment for a reduced sum, suggested by the court, or accept a new trial.

*Error from Douglas District Court.*

ACTION by Eddie Mitchell by John C. Mitchell, as his next friend, against The Union Pacific Railway Company, to recover damages for ejection from a train. There was a judgment for plaintiff, and defendant brings error.

The following facts are either undisputed or found by the jury : The plaintiff below was a boy 14 years old. He had started from Olathe to go to Colorado Springs, where his father was. He had made his way over other railroads to Junction City, from which point he had gone over the defendant's railroad as far as Wallace, which place he reached July 26, 1890, on the first section of freight train No. 211, in company with some other boys who were beating their way west as he was doing. He got off the train at Wallace and prepared to board the second section, which pulled into Wallace about as the first section pulled out. Several tramps had attempted to board the first section, and they tried to get upon the second section as soon as it started up. Among those who were waiting to board the second section were young Mitchell and his companions. They knew they were not permitted to steal a ride upon the train, and that efforts would be made to prevent them from doing so. They did not attempt to get upon the train while it was standing still, but waited until it had started. Plaintiff below and his companions went upon the south side of the track, which was the side opposite the depot and buildings at Wallace, and after the train started he attempted to board a box car, but

failed. He allowed two or three cars to pass him, and then jumped upon a coal-car having high side-boards. The train was going about as fast as he could run. He caught hold of the ladder with his right hand. His left hand held to an iron socket attached to the side of the car. His right foot was in the stirrup, and his left upon an axle-box. As he got upon the car he saw a boy, or young man, Roy Wilson, (a stranger to him,) standing alongside the track, about 25 feet ahead of him, and also saw the conductor and head brakeman upon a box car ahead, and heard the conductor halloo to Roy Wilson to jerk him off or pull him off. Wilson then took hold of him and attempted to pull him off the train. Mitchell succeeded in holding on until he had got a few feet beyond Wilson, and then fell off, his hold having been loosened by the encounter. As he came to the ground his right arm fell under the wheels and was cut off. The train did not slow up after he got upon it, but continued on its way, the trainmen, not knowing that he was injured. The arm was necessarily amputated at the junction of the middle and upper third of the humerus. Roy Wilson was not an employee of the railway company, but was learning telegraphy in its office by the favor of the station agent at Wallace.

The essential instructions given by the court below, after a succinct statement of the issues, were as follows:

'' Upon these issues, the burden of proof is upon the plaintiff; and before he can recover, he must prove, by a preponderance of the evidence, by which is meant the greater weight of proof,

''(1) That the defendant's line of railway extended into, and was operated in the counties of Wallace and Douglas, in this state, at the time complained of; (2)

that the plaintiff, while attempting to ride upon defendant's train, at Wallace, at the time charged, was pulled therefrom by said Roy Wilson, and injured in the manner substantially as alleged in the petition; (3) that said Roy Wilson was either an employee of said railway company, or was acting under the order or direction of the conductor or brakeman upon said train, in trying to eject the plaintiff therefrom; (4) that in removing or attempting to remove said plaintiff from the train, the conductor or brakeman of the defendant, or said Roy Wilson, so acting by their direction or authority, was guilty of wilful, wanton, malicious or reckless conduct, and that he sustained the injuries complained of in consequence of such wilful, wanton, malicious or reckless conduct.

"Eddie Mitchell, being a trespasser upon the grounds and train of the defendant, had no right on said train, and the defendant, by and through its agents, servants and employees, had a right to remove him therefrom. They were not bound to consult his convenience in the matter and can only be held liable in the matter for injuries inflicted which were wilful, wanton, or malicious, or which were so grossly negligent as to amount to wantonness. If, however, in ejecting him, they did so in a reckless, wilful, wanton, or malicious manner, whereby he was injured, he may recover. In determining whether wilful, wanton or malicious injuries were inflicted, you are to consider all the circumstances of time and place, the speed of the train, and the entire situation. 'Wanton,' as here used, is reckless sport; wilful, unrestrained action, running immoderately to excess. By 'recklessly,' is meant an indifference to the rights of others; an indifference whether wrong is done or not.

"I charge you that it is within the general authority of the conductor or a brakeman of a railway-train to keep trespassers off of their trains, and to put them off after they have gotten on. And if they recklessly, or in a wilful, wanton or malicious manner, eject a trespasser, so that he is likely to suffer great bodily harm, the railroad company becomes

liable for the damages ; nor is it necessary, in order to render the company liable, that the conductor or brakeman should actually lay hands on the trespasser ; and if the trespasser is so ejected by a third person, at their instance, all are equally guilty of an assault, and the railroad company is liable.

" I charge you that if you find from the evidence in this case that Eddie Mitchell, on or about the 26th day of July, 1890, at the city of Wallace, in Wallace county, Kansas, climbed upon a car of one of the defendant's west-bound freight-trains, with the intention of stealing a ride, and that while attempting to get thereon, or while clinging thereto, the conductor or a brakeman of said train called to one Roy Wilson, whilst said train was in motion, to 'keep him off,' to 'jerk him off,' or 'pull him off,' and that said Roy Wilson, in obedience to said call or command, caught hold of said Eddie Mitchell, and whilst said train was in motion pulled and dragged the said Eddie Mitchell, and caused him to lose his handhold and footing and to fall under the wheels of said running train, whereby his right arm was cut off ; and if you further believe that, under all the circumstances of this case, the brakeman, conductor and Roy Wilson did not exercise proper care and prudence in the exercise of the right to remove Eddie Mitchell from the train, but without having agreed to time, place, or surrounding danger, recklessly, in a wilful, wanton or malicious manner, ejected him, in a manner liable to do him great bodily harm, you will find for the plaintiff.

" If you find for the plaintiff, your next inquiry will be as to damages.    Here no certain rule can be given.    You should consider his age, health and physical condition before the injury, the inconvenience and incapacity to labor resulting therefrom, the physical pain and suffering, if any, and award such sum as in your sound judgment is just and reasonable for the injury suffered."

The opinion herein was filed January 11, 1896.

*A. L. Williams, N. H. Loomis,* and *R. W. Blair,* for plaintiff in error.

*Byron Sherry, J. W. Parker,* and *S. T. Seaton,* for defendant in error.

The opinion of the court was delivered by

MARTIN, C. J. : I. The railway company contends that the evidence is not sufficient upon which to base a judgment against it.    Some of the facts were contested.    The conductor and the head brakeman testified that they gave no order to Roy Wilson or anyone else to jerk off or pull off young Mitchell from the train ; but the jury found, upon evidence which we must hold sufficient, that such order was given by the conductor.    We must therefore accept the finding of the jury touching this important fact in the case. Our attention is called to *A. T. & S. F. Rld. Co. v. Gants,* 38 Kan. 608, 625, where this court, treating of the ejectment of a trespasser from a passenger-train, said : " By resisting to the utmost of his power and ability, Gants invited force, and he ought not to complain of the force used, if there was no intention upon the part of the conductor or his assistants to commit unnecessary injury."    But in that case the principle was expressly recognized that care must be taken not to expose the person of the trespasser to serious injury or danger ; and it was a question of fact, to be determined by the jury in this case, whether or not the pulling or jerking of the boy from the train by order of the conductor while it was running at the rate of speed shown by the evidence, which was 9 or 10 miles an hour, was such an act as to expose the boy to serious injury or danger.    We do not deny the right of those in control of railway-trains to eject a

trespasser therefrom even when moving, but when the speed is so great that removal from the train is necessarily attended with great danger of serious injury to the person of the trespasser such right does not exist, and whether the circumstances are such as to justify the ejection of a trespasser from a moving train is a question of fact that must be submitted to the jury, under proper instructions of the court. (*K. C. Ft. S. & G. Rld. Co. v. Kelly*, 36 Kan. 655, 657, 658.)

II. The plaintiff in error complains of the instructions given by the court, and says that under them a recovery might be had for mere negligence in removing young Mitchell from the train, the term "reckless conduct" meaning nothing more, and being coupled disjunctively with the words "wilful," "wanton," and "malicious." It is contended that a trespasser in such case has no remedy, unless the act of the defendant resulting in the injury was either wilful, wanton, or malicious, and the cases of *U. P. Rly. Co. v. Adams*, 33 Kan. 427, 429, *A. T. & S. F. Rld. Co. v. Gants*, supra, and *Tennis v. Rapid Transit Rly. Co.*, 45 Kan. 503, 507, are cited in support of this position, but they are not inconsistent with *K. P. Rly. Co. v. Whipple*, 39 Kan. 531, 540, where it was said that "the fact that one has carelessly put himself in a place of danger is never an excuse for another recklessly or wantonly injuring him"; and the definitions of recklessness and wantonness given by the court below were taken from the opinion in that case, where it is further stated, that "in popular use, and by our decisions, recklessness and wantonness are stronger terms than mere ordinary negligence, and therefore, if a person recklessly or wantonly injures another, such person may be subject to damages, even if the other party has been

guilty of some negligence or is a trespasser." As the court carefully used and fairly defined the term "reckless conduct" and "recklessly" in connection with the facts in the case, the plaintiff in error has no substantial ground of complaint in this regard.

III. The jury returned a verdict in favor of the plaintiff below for $9,000. On the hearing of a motion for a new trial, the court permitted the plaintiff to reduce the damages in the sum of $2,500, and stated that, on failure to do so, a new trial would be ordered; and the reduction being accepted, judgment was rendered for the sum of $6,500. The railway company contends that the court had no right to make this order, but should have awarded a new trial, by reason of the allowance of excessive damages given under the influence of passion and prejudice. The court filed a written opinion on the decision of the motion, and in this there is no suggestion of passion or prejudice on the part of the jury. But the court, after reviewing the decisions of this court in personal-injury cases, held that $6,500 was a reasonable sum, and that all above that amount was excessive. In *Mo. Pac. Rly. Co. v. Dwyer*, 36 Kan. 58, 74, it was held that this court had the right in such cases to suggest the reduction of damages to a reasonable sum, and to permit the plaintiff to elect to take judgment for the reduced amount, or compel him to accept a new trial. And this being permissible, we are aware of no reason for the denial of the exercise of like power by the trial court, which is often better able than the appellate court to act intelligently in the premises; and the right of the trial court to compel a remission of part of the verdict in damage cases was upheld in *Broquet v. Tripp*, 36 Kan. 701, 704. There is no conflict between these cases and *P. & P. Rld Co. v. Montgomery*,

46 Kan. 120, which was an award of damages in a condemnation proceeding depending upon estimates given by witnesses respecting values forming a basis for the verdict, and it was evident from the record that the jury had gone to the extreme limit of the highest estimates on each item, and the court compelled a large gross reduction, not explainable from the record on any other hypothesis than that the verdict was unfair and indicative of passion and prejudice of the jury; and wherever this is apparent a new trial must be granted.    But in personal-injury cases, as stated by the court below, no certain rule of damages can be given, and the jury were properly instructed that, in the event of a verdict in favor of the plaintiff, they should award such sum as in their sound judgment was just and reasonable for the injury suffered.    The mere fact that the trial court, on a review of our Kansas decisions, came to the conclusion that the award was larger than had been generally sustained by the precedents in this state, was no evidence that he considered that the jury was actuated by passion or prejudice in fixing the amount.

The case seems to have been fairly tried by the court and jury, and the judgment must be affirmed.

All the Justices concurring.