SOUTHERN RY. CO. v. SHAW.

(Circuit Court of Appeals, Fifth Circuit. April 19, 1898.)

No. 625.

1. TRIAL—ARGUMENT OF COUNSEL—IRRELEVANT TESTIMONY.
   The court may properly direct counsel to desist from discussing to the jury immaterial evidence that has been ruled out.

2. SAME—REQUEST TO CHARGE—UNFAIR STATEMENT OF EVIDENCE.
   Requests to charge, which do not fairly state the testimony, and which sum up the evidence for the defendant without stating with anything like judicial fairness what it tends to prove, are properly denied.

3. NEGLIGENCE—STEALING RIDE—DUTY OF RAILROAD COMPANY.
   After the presence of a person stealing a ride on a train is discovered, the railroad company owes him the duty which humanity imposes, and his efforts to cling to the train to prevent falling under the wheels cannot be considered as a resistance to those attempting to remove him while the train is in motion.

86 F.—55

4. SAME.
    Where a person stealing a ride on a train continues to get on after being put off, it does not entitle the railroad company to use increased force, especially where the trespasser is a child 10 years old.
5. SAME—ORAL REQUESTS MADE DURING ARGUMENT TO JURY.
    The court is not bound to notice oral requests to charge, made by counsel during his argument to the jury.

In Error to the Circuit Court of the United States for the Southern District of Georgia.

Walter B. Hill and N. E. Harris, for plaintiff in error.
R. C. Jordan, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and SWAYNE, District Judge.

McCORMICK, Circuit Judge. Dennis Shaw, by his next friend, Mary Doyle, the defendant in error, brought his action against the Southern Railway Company, the plaintiff in error, to recover damages for personal injuries inflicted on him by a moving train of railroad cars which was being operated by the plaintiff in error, stating his case, so far as we deem it necessary to quote from his petition, thus:

"That on or about the 20th day of August, 1895, your petitioner, who was a minor of only ten years of age, and whose mother and father were both dead, lived with a colored man in the city of Macon, who continually beat, abused, and so cruelly treated your petitioner that he could no longer live with him. That on or about said 20th day of August, 1895, your petitioner left the city of Macon, and walked as far as the first station on defendant's road south of Flovilla, Georgia. That while your petitioner was at said station, on said 20th day of August, 1895, one of the passenger trains of the defendant, which was going north, stopped at said station, and your petitioner, desiring to get to Atlanta, Georgia, being tired and footsore, and having no money with which to pay his fare, got under one of the cars of said train, holding on by means of the beams, fastenings, and iron rods under said car. That your petitioner rode in this position until the train reached Jackson, Georgia, at which station defendant's train again stopped. That, just as the said train was leaving Jackson, and after it had begun to move with considerable speed, the flagman on said train, which said flagman was a servant and employé of the defendant, discovered your petitioner riding under said car; and, instead of stopping the train, and removing or having your petitioner removed, as he had a right to do, and as it was his duty to have done, he, the said flagman, recklessly, wantonly, willfully, and maliciously caught and grabbed your petitioner by the leg, and jerked, pulled, and kicked him loose from under said car."

The plaintiff in error (the defendant below), besides the general denials, not necessary to be quoted, answered:

"That on the 20th day of August, 1895, a number of negro tramps were attempting to steal a ride upon its north-bound passenger train, known as train 'No. 7,' going from Macon to Atlanta. That it was discovered, just as said train moved off from Jackson, in said county of Butts, that these tramps or trespassers were riding upon the trucks of one of the coaches of said train. Thereupon the train was stopped, and the train hands ordered said trespassers to get off the trucks, which they then and there did, the train having come to a full stop when they were ordered off and when they got off. Thereupon the train again moved off, and, after proceeding only a short distance, it was again discovered by the train hands that all or some of these trespassers had again gotten upon the trucks of said car. That thereupon the train was again stopped, and the said train hands ordered the said trespassers to get off of said trucks, which they then and there did while the train was standing still, and then the defendant's train proceeded on its route to Atlanta. * * * Defend-

ant does not know the age of the plaintiff, but denies that his father was dead, and also denies that the plaintiff was beaten, abused, and cruelly treated by the colored man with whom he lived in the city of Macon. On the contrary, the defendant is informed that the plaintiff lived in Macon with his father; that his father treated him kindly; and that the plaintiff, without cause, or the knowledge of his father, ran away from home."

The judge, in the opening of his general charge to the jury, used this language:

"The action is brought by the plaintiff to recover damages for the mutilation of his person,—the loss of one arm and a portion of the hand of the other arm. It is not disputed that the plaintiff was injured. The extent of his injuries is not controverted; nor is it disputed that the injuries were sustained because one of the cars of a passenger train of the defendant company ran over and crushed the arm of the plaintiff and a portion of his hand. The plaintiff's case depends upon the question whether or not he has satisfactorily maintained by proof his contention that he was unlawfully, recklessly, and negligently ejected from the cars of the defendant company."

On this vital issue, thus clearly stated to the jury, there was much testimony offered which tended to support the plaintiff's case, and much other testimony in conflict therewith. The case came on for trial on the 30th of April, 1897, and remained on trial continuously (excluding Sunday) until the 4th of May. Before the court began the charge to the jury, the defendant's counsel submitted the following:

"Requests to Charge by Defendant.
"Dennis Shaw, by Next Friend, vs. Southern Railway Company.

"Defendant's counsel respectfully ask the court to give in charge to the jury the following requests (the same being made as separate requests):

"(1) In this case the plaintiff, by his own admission, was a trespasser upon the defendant's train. In such case there is no presumption against the defendant company, even though the defendant was injured by the running of the cars of the railroad. The burden of proof is on the plaintiff to show that, if a trespasser, he was injured by the defendant or its agents in such manner as to entitle him to recover under the rules of law as given you by the court. The plaintiff must show by the preponderance of the evidence that he was injured in the manner alleged in his amended declaration.

"(2) 'Where no duty of diligence appears relatively to the person injured, there can be no presumption of its breach, notwithstanding the broad language of section 3033 of the Code. That section imposes the burden of proving the observance of such diligence as was due; not the burden of proving that none was due. For a railroad to be exempt from liability for a personal injury done by the running of its locomotives or cars, it is only necessary for it and its agents to exercise all ordinary care and diligence (if any) due from it and its agents relatively to the person injured.' Holland v. Sparks, 92 Ga. 753, headnote 1, 18 S. E. 990. See, also, Waterbury v. Railroad Co., 17 Fed. 682, note, art. 1, § 5.

"(3) For the purpose of expelling a trespasser from a train, the employés of a railroad company may lawfully use whatever amount of force is reasonable, proper, and necessary.

"(4) In this case the plaintiff states that he was stealing a ride from Flovilla to Jackson; that, after the train left Jackson, it slowed up, and that when it slowed up he could have gotten off with safety: that he did not then get off; that afterwards the flagman of the train attempted to pull him off; that he resisted this effort forcibly. Upon this state of facts, appearing from the plaintiff's admissions, the court charges you that, if you believe the plaintiff's statement to be true, then the defendant's agents had the right to use some force in removing him from the train, and such as was necessary for the purpose.

"(5) The railroad company in this case was not under any duty to the plaintiff as a trespasser. The only limitation upon its right to remove a trespasser

from the train is that the force used in such removal shall not be unnecessary or wanton or malicious, or exercised for the purpose of injuring the plaintiff.

"(5) If, in this case, the jury believes the plaintiff's statement to be true, and that he was upon the train after it had 'slowed up' for the purpose of getting him off; that he remained on the train in spite of his knowledge of this purpose; that the train afterwards stopped,—the plaintiff stating that he could have gotten off, when it stopped, with safety, and that after the train began to move it moved forward at the rate of only three or four miles an hour; that this rate of motion was about half as fast as a man ordinarily walks, and that while the train was moving thus slowly the flagman attempted to pull the plaintiff off,—the plaintiff resisting; and that the flagman believed, and had reasonable cause to believe, that at this rate of speed the plaintiff could be removed from the train without injury; and that the flagman for the sole purpose of removing the plaintiff, and not for the purpose of injuring him, removed the plaintiff, and that the falling of the plaintiff under the wheels was unavoidable and unintended accident,—then, in this case, the defendant will not be liable.

"(6) If the jury believe from the evidence that the plaintiff got off the train at Jackson, and that as the train moved off he got on again; that the train came to a stop, and that the plaintiff, with other trespassers, was then warned off; that when the train moved off from this stop the plaintiff again got upon it, and that there was a second stop of the train for the purpose of removing trespassers, and that at this second stop the plaintiff and other trespassers were again warned off, and that when the train moved off the plaintiff again got upon the train,—the court charges you that this continuing trespassing on the part of the plaintiff puts him in the attitude towards the defendant company of a persistent and obstinate trespasser, and that the degree of force which the defendant's agents were entitled to use in removing him from the train would increase along with each additional degree of persistency and obstinacy exhibited by the plaintiff, and the defendant would not be liable for the exercise of force in removing him from the train unless the force so exercised was out of proportion to the persistency and obstinacy of the plaintiff's efforts to continue upon the train, and unless the removal was accomplished with unnecessary, malicious, or wanton violence.

"(7) In this case the defendant's defense is a total denial of the plaintiff's allegation as to the manner in which he was injured; and if the jury believe from the evidence which has been adduced by the defendant that the plaintiff's allegations have been disproved, then the plaintiff cannot recover, and it is not incumbent upon the railroad company to account for the manner in which the plaintiff has been injured.

"(8) In considering the truth of the plaintiff's allegations, you will consider their reasonableness. And if you believe from the evidence that the plaintiff, if riding upon the truss rods, was at a point near the outside edge of the baggage car, and that, if he was pulled down from this position, he would not have fallen upon the rail, but would have fallen outside the rail; or if you find from the evidence that he was secreted under the trucks, and in the middle of the car, and if the plaintiff states that he was pulled and kicked from about the middle of the car; and if you believe from the evidence that on account of the height of the car above the ground, and on account of the distance from the middle of the car to the position a man would occupy on the outside of the same, it was physically impossible for the plaintiff to be kicked from the car in that position,—then all these matters are proper for your consideration in determining the truth of the plaintiff's statement.

"(9) In this case the defendant has adduced evidence tending to show that after leaving Jackson the plaintiff's train made a full stop, and that the trespassers on the train, including the plaintiff, were then warned off, and got off the train; that, after the train moved on, they got back upon the train; that the train stopped a second time; that again the trespassers, including the plaintiff, were warned off and removed; that both of these stops were for the sole purpose of removing those trespassers from the train; that no one of the train employés at any time touched or got his hand upon the person of the plaintiff; that both of these stops of the train were south of the point where, upon the next morning, a quantity of blood

was found upon the track, and one of the plaintiff's fingers was picked up; that this point where the blood and the finger were found was at a point where the train was moving forward after its second stop, and two hundred and forty yards distant from the north end of the depot; that none of the train hands heard the cries of pain which the plaintiff declares he made at the time he was injured. Now, if the evidence which has been submitted by the defendant satisfies you of the general truth of the theory above outlined, then your verdict will be for the defendant."

On this paper the trial judge made the following note: "In so far as these requests are pertinent and permissible, the court prefers to give them in his own language." The judge, on his own motion, gave an extended and comprehensive charge to the jury, embracing such instructions as he considered pertinent to all the features of the case presented by the pleadings and the proof. There was a verdict and judgment in favor of the plaintiff for the sum of $1,750, from which the defendant has sued out and prosecutes this writ of error.

The assignment of errors suggests: (1) That the court erred in ruling that the testimony of a certain witness (Hartswell), set out in the bill of exceptions, had anything to do with the case, and in directing the defendant's counsel to desist from their discussion of the same. The bill of exceptions referred to shows the testimony of that witness in full, and shows that at the close of his examination on the stand the court announced: "I fail to discover any materiality in any of this testimony. It is perhaps interesting as illustrative of a certain phase of life and existence, but it has no material relation to this case. The boy denies that the witness is his father. In law he is not his father, although perhaps the author of his existence." We have read the testimony of the witness referred to with care, and, like the trial judge, we cannot discover in it anything that is material to any of the issues in the case. The jury must have understood the court to have ruled it out. Counsel should have so understood it. And when, disregarding the clear announcement of the court, counsel was proceeding to discuss this testimony to the jury, the court properly forbade it.

The errors numbered 2 to 8, inclusive, suggest that the court erred in refusing requests to charge numbered 4 to 9, inclusive, as given above. We here quote with approval the language of a distinguished judge, who, on a like occasion, attached this note to a similar request for charges:

"The court declined to give the requests to charge the jury, as indicated above, for the reason that, in so far as they were deemed proper, they were thought to be covered by the instructions given, and also because it is regarded as a pernicious practice to couch voluminous instructions to the jury in the precise language desired by counsel, when the court, in the performance of its duty, thinks it more conducive to a fair trial to use language not colored by the zealous anxiety of the advocate, even though the language of the presiding judge may not be altogether so felicitous as that suggested by counsel. This is especially true when the requests for instructions are so extensive as practically to appropriate all the functions of the court with relation to instructions to the jury."

We have observed that in suits by persons claiming damages from railroad companies for personal injuries inflicted by the operation of their trains, an elaborate thesis on the subject of the carrier's

liability, compiled by the defendant's counsel from language found in the reported opinions of courts of last resort, or in the headnotes to such opinions, and applied argumentatively to the counsel's view of the proof in the particular case on trial, so as to embrace and exhaust every feature of it, is almost invariably presented to the court before the judge delivers his own charge to the jury. We think it is safe to say that the United States judges, who are appointed for good behavior, are somewhat conversant with the reported opinions of courts of last resort on questions so constantly before the courts as the questions involved in this case. The object in presenting such requests to charge appears to be to furnish a basis for assignments of error. It is not rational to suppose that learned counsel, practicing before a court presided over by a judge whose tenure is permanent, and with whose modes of thought and method of action they are or may become so well acquainted, reasonably expect such a judge to give exactly in the language they use the particular and numerous instructions they request. Considered, therefore, as a basis for an assignment of error, it is appropriate to suggest to such counsel that the object of an assignment of error is to reach the minds of the judges of the court of errors; and for this purpose the office of a requested charge is to make specific the counsel's exceptions to an erroneous charge given by the court, or an omission to charge on a point or matter calling for instructions.

We have observed, and have more than once remarked, on another general tendency in the practice of counsel representing railroad corporations (and not always restricted to them), inducing them to bring to this court, on one ground or another, all of the evidence offered on the trial in the circuit court. In the bill of exceptions in this case we find this language:

"Evidence was adduced in behalf of the plaintiff and defendant, which is hereto attached as 'Exhibit A,' and made a part of this bill of exceptions, and identified by the signature of said judge; said evidence being material to the understanding of the cause, and being all of the evidence that was adduced by either party in said cause, the whole of the same being material to an understanding of the exceptions made and errors assigned."

Waiving the compliment to the judicial vision of the circuit court of appeals, we suggest that it is not conducive to our understanding of the exceptions made and the errors assigned to send up to us 76 printed pages of questions and answers, showing the direct, cross, and redirect examination of various witnesses on the stand, the tendency of which testimony to support the contradictory contentions of the parties could easily have been clearly stated on a single page.

The fourth request should not have been given, because it did not fairly state the plaintiff's testimony. His testimony does not show that he forcibly resisted the effort to remove him from the train. It does show that, while the train was still moving at the rate of three or four miles an hour, the flagman seized him by his feet, and he held onto the rod with his left hand, to keep from falling so that the wheel would run over his arm. The fifth re-

quest was properly refused, because it is not sound as matter of law. Though the plaintiff was a trespasser, after his presence was discovered the corporation did owe him the duty which humanity imposed. The first request numbered 6 was properly refused, because it undertakes to give the plaintiff's statement,—referring, doubtless, to his statement as a witness on the stand,—and is subject in a higher degree to the criticism which we have made on request No. 4. The next request, also numbered 6, was properly refused, because the hypothesis which it submits to the jury finds no reasonable support from the testimony taken as a whole, and, further, because, in view of the fact that the train was moving at the time, the instruction is not sound, even if the hypothesis it submits was supported by the preponderance of the proof. And especially is this true when we consider the tender years of the trespasser. The seventh request should have been refused, because 12 men competent to sit on a jury do not require to be instructed that, if the plaintiff's allegations have been disproved, he cannot recover. And the concluding line of this request is a non sequitur.

Requests Nos. 8 and 9 should have been refused, because they undertake to sum up the evidence in behalf of the defendant, as drawn from the testimony offered by the defendant, and from the pleadings and the testimony of the plaintiff, and they do not state with anything like judicial fairness and fullness what the evidence tends to prove, but in a confused way seek to emphasize unduly certain detached elements in the case, consisting partly of direct testimony, but largely of conclusions of fact expressed by the different witnesses, and conclusions of fact and of law deduced by the counsel from the direct testimony and the conclusions of the witnesses. We conclude that there was no error in refusing these requests as tendered to the court before it, on its own motion, had charged the jury. The ninth error assigned is that the court failed to charge the jury with reference to the effect of the impeachment of the plaintiff by the proof of his previous contradictory statements. There was no request in writing tendering to the court a proper instruction on this subject, even if the case called for an instruction on the subject, which is by no means apparent to us. The record shows that in the midst of his oral argument to the jury, while discussing what the counsel claimed to be discrepancies between statements made by the plaintiff on the stand and statements he had made to others, counsel turned to the court, and orally requested the court to submit to the jury a proper instruction bearing upon that phase of the proof. It was not error in the court to omit to comply with this request thus made. The tenth, eleventh, twelfth, and thirteenth errors assigned suggest that the court erred in giving certain portions of his general charge. We do not discuss them in detail. We have examined them in detail, and read them carefully in connection with all of the other portions of the charge, and, thus read, we do not find in them any error for which the case should be reversed. It follows that the judgment of the circuit court should be, and it is, affirmed.