JOSEPH JOHNSON, Appellee, v. THE CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Appellant.

**Railroads:** VERDICT. A verdict which has any substantial support
1    in the evidence will not be disturbed on appeal.

**Ejection of Passenger.** Where there was conflict in the evidence
2    as to the speed at which a train was moving when plaintiff was
ejected; it was for the jury to determine whether the ejection
was under such circumstances as to endanger life.

**Evidence:** CUSTOM: HABITS: INTENTION. In an action for injur-
3    ies to a trespasser on defendant's train caused by ejecting him
therefrom, evidence that tramps were accustomed to ride and
jump from moving trains and that plaintiff's general appear-
ance led the brakeman to believe that he belonged to that class,
and that he did not intend to injure plaintiff, was properly
excluded.

**Evidence:** INTENTION. Evidence as to the purpose of plaintiff, who
4    was ejected, in boarding a train, except as it indicated his con-
duct or declarations at the time was immaterial.

**Duty to Trespasser:** NEGLIGENCE. A railroad company does not
5    owe a trespasser on its train the same duty that it does a pas-
senger, and generally owes him no duty until his presence is
discovered, when it should not expose him to unreasonable dan-
ger, or to negligence which has special reference to a tres-
passer.

*Appeal from Woodbury District Court.*—HON. JOHN F.
OLIVER, Judge.

SATURDAY, FEBRUARY 20, 1904.

ACTION at law to recover damages for personal injuries received by plaintiff in being pushed or kicked from one of defendant's trains. The case was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Thomas Wilson* and *Wright & Call* for appellant.

*Hallam & Munger* for appellee.

Deemer, C. J.—This is the second time the case has been before us. The first opinion will be found in 116 Iowa, 639. On the former trial a verdict was directed for the defendant at the close of plaintiff's evidence. When the case was retried, the entire evidence was taken, and the jury found a verdict for plaintiff, as indicated above.

I. Appellant first contends that the verdict is without support in the evidence. This is based upon the proposition, not that there is no evidence to support it, but upon the

1. VERDICT.    thought that four witnesses on the part of the defendant as to how the accident occurred are entitled to more weight than plaintiff, who, it is asserted, was a "wandering tramp." Manifestly, this was a question for the jury, unless we are to say that an appellant tribunal must, in a law case, weigh evidence, and determine for itself where the preponderance lies. This it manifestly cannot do, without assuming a function not given it by law. Under our system, a jury must determine the facts, and, if there be any substantial support for its finding, an appellate tribunal should not interfere.

II. Next it is said that the verdict is contrary to the instructions, in that the jury was told that plaintiff could not recover unless he showed that he was evicted from the

2. EJECTION of    train under such circumstances as to endanger
   passenger,     life or limb, and that the evidence conclusively shows that he was not so evicted. This was manifestly a question for the jury. The evidence is in conflict as to the speed of the train when plaintiff was put off, and it was a question of fact, rather than of law, as to whether the eviction was made under such circumstances as to endanger life or limb. Some of the evidence tended to show that when plaintiff was evicted the train was moving faster than a man could run, and it was for the jury to say whether or not an eviction under such circumstances was calculated to endanger life.

III. The negligence charged in the petition was "that said injury was caused to plaintiff solely by reason and on

-15.

account of the careless and negligent conduct of the brake-

3. **EVIDENCE: custom; habits: intention.** man in forcibly kicking, thrusting, and hurling him from said car when the same was running at a very high rate of speed." In answer to special interrogatories, the jury found that defendant was guilty of the negligence charged and complained of, and that it was not due to plaintiff's efforts to reboard the train, after he had been ejected. During the trial, defendant offered to prove the following: First. That at the time of plaintiff's injury, and for a long time continuously theretofore, a large number of persons, commonly known as "tramps" or "hobos," were accustomed to trespass upon the freight trains on which this witness was employed, for the purpose of stealing rides from place to place; that they were accustomed to enter upon and leave said trains while the same were moving rapidly, and were also accustomed, when ordered or required so to do, to cease trespassing upon said trains, by jumping from the ladders on the sides of the box cars, when the trains were moving more rapidly than the highest rate of speed the train under which plaintiff was injured acquired after leaving South Sioux City, up to and including the time of the accident. Second. That, at the time of plaintiff's injury, his general appearance and conduct led this witness to believe, and he did believe, prior to the injury, that plaintiff was one of the class of persons commonly known as "tramps" or "hobos," and that he could with safety get upon and alight from the ladders on the sides of box cars in trains moving faster than the train in question moved at the time plaintiff was last required by this witness to leave the same. Third. That this witness never at any time intended to injure plaintiff. Objection thereto was sustained, and of this complaint is made. Defendant's witnesses were permitted to describe the appearance, actions, and conduct of the plaintiff at all times material to the inquiry; and it was entirely immaterial to show the custom and habits of other people, as to what defendant's employes thought and believed concerning the plaintiff, or as

to what they intended or did not intend to do.   Their conduct must be measured by what the evidence shows they did, and it was for the jury to say, under all the evidence. as to whether or not defendant's agents were guilty of the negligence charged.   Of course, they had the right to describe plaintiff's appearance, conduct, and demeanor, and this they did.   But their conduct as to him must be viewed from this standpoint, rather than from what other persons may have done or failed to do.   It was no defense to show that they did not intend to injure the plaintiff, or that the employes thought plaintiff could be forcibly ejected from the train at the time they did.  This was wholly for the jury.  Human life cannot be jeopardized simply because the party charged believed that the injured one belonged to a certain class, and that he could, by reason of that fact, be safely ejected at a time and place where such ejection would ordinarily be dangerous to life and limb.   If they assume to do so, they act at their peril.   Ordinarily the law looks to the average, the ordinary, the ideal average man—the man possessed of those traits and habits possessed by the general average of mankind.   If it were otherwise, great confusion would be introduced into the law of negligence, and cases would be tried upon the basis of what the party charged with negligence believed or intended.   Manifestly, this cannot with safety be made the standard of care.   There was no error in the ruling complained of.   It was not for the brakeman to say whether or not he thought he could eject the plaintiff without injury. When his conduct is to be weighed in the scales of justice, it is for the jury to say whether or not he did that which would endanger the life of a fellow being.

IV.   Defendant also complains of a ruling denying it the right to cross-examine the plaintiff as to his purpose in getting on the train.   This was immaterial, save as his con-

4. EVIDENCE: intention. duct or declarations at the time indicated his purpose.   This the court permitted to be shown.

V. The instructions are complained of. The exact point made is that the court erred in saying to the jury that defendant might be liable either because of a deliberate and

**5. DUTY to trespasser negligence.** wanton act done with intent to injure plaintiff, or by reason of negligence. Further it is contended that defendant cannot be held liable, under the circumstances, for mere negligence. Whatever of merit there might be in this as an abstract proposition, the facts of this case clearly negative any suggestion of prejudice. The instructions, as a whole, leave no room for doubt as to what the court meant by the use of the term "negligence." The whole matter was epitomized in this extract from the seventh instruction: "And if you find from a preponderance of the evidence that the head brakeman upon said railway train, acting in the discharge of his duties, and within the scope of his employment as such, violently and forcibly pushed the plaintiff from said train while the same was moving at such a high or dangerous rate of speed that a person falling or attempting to alight therefrom would be liable to be thrown beneath the wheels and injured, and that said brakeman knew, or should, in the exercise of ordinary care, have known that it would greatly endanger the life or limb of the plaintiff to be so forced or pushed from said train, then you will find that the defendant railway company was guilty of the negligence charged and complained of. And if you so find, and you further find from the evidence that, by reason of being so pushed from said train, the plaintiff fell or was thrown under the wheels of the same, and received the injuries in question, and that, after discovering the purpose of said brakeman, and the peril to which he was then subjected, he could not, in the exercise of ordinary care, have prevented said injuries, and did not by any negligence on his part directly contribute to produce the same, then he will be entitled to recover herein, and your verdict will be in his favor."

We have already quoted the allegations of negligence found in the petition, and it is manifest that the court was right in submitting not only the question of willful and in-

tentional wrong, but also of negligence, as charged in the petition. This thought was emphasized in the opinion when the case was first before us, and it is evident that the trial court closely followed the principles of law there announced in giving its instructions on this point. There is a clear distinction between the negligence here charged and relied upon, and mere inadvertence or omission on the part of the defendant and its employes. Whatever was done was willful—that is to say, intentional—and, while the particular harm done may not have been intended, the act which produced that harm was intentional, and not the result of accident or misfortune. Of course, plaintiff was a trespasser upon the train, but regard in such cases must always be had to the distinction between contributory negligence and the duty which one owes to a trespasser. If one is guilty of contributory negligence, no matter how slight, which contributes proximately to his injury, he cannot recover. This is on the theory that he cannot take advantage of his own wrong, and that it is impossible to divorce his conduct from that of the defendant, and to say what was in reality the proximate cause of the injury. In the instant case plaintiff was on the car, hanging to the round of the ladder. This was not the proximate, or one of the proximate causes of his injury. Had he been let alone, he would not have been injured. But he was a trespasser, and perhaps was guilty of a violation of law in boarding the train while it was in motion, but this is a different thing from contributory negligence. In *Ramm v. R. Co.,* 94 Iowa, 296, we held that a railway company was liable for the tort of a brakeman in removing a trespasser from a train, whether the wrongful act was merely negligent, or criminal and willful. See, also, *Marion v. R. Co.,* 64 Iowa, 574. It goes without saying that a railway company does not owe to a trespasser upon its trains the same duty that it does to passengers, and, as a general rule, it owes the former no duty until his presence is discovered. But after discovering his presence, it was defendant's duty not to expose him to unreasonable or unnecessary dangers, or to negligence which had

special reference to the trespasser. *Stone v. R. Co.,* 88 Wis., 98 (59 N. W. Rep. 457); *Suthern R. R. v. Shaw,* 86 Fed. Rep. 865 (31 C. C. A. 70, 58 U. S. App. 201); *Carter v. Louisville Co.,* 98 Ind. 552 (49 Am. Rep. 780); *Union R. Co. v. Mitchell,* 56 Kan., 324 (43 Pac. Rep. 244). See, also, as sustaining the same conclusions, and as upholding the instructions of the trial court, *Benton v. R. Co.,* 55 Iowa, 496. The jury found specially that defendant was guilty of the negligence charged and complained of in plaintiff's petition. This, we held, was sufficient to warrant a recovery when the case was first before us; and, as that decision made the law for the case, it is manifest that the matters now complained of are without merit.

VI. Defendant asked certain instructions, which were each and all refused. In so far as correct and in accord with the law announced in the former opinion, they were given by the court in its charge to the jury.

There is no error in the record, and the judgment is AFFIRMED.