THE ATCHISON, TOPEKA & SANTA FE RAILWAY COM-
PANY v. DOW K. MORRIS.

No. 12,463. ( 67 Pac. 837.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Injury at Crossing—Frightened Horse.* The
main track and side-track of a railway built through a city crossed
one of its public streets. A traveler on horseback waited about
fifteen minutes for a train obstructing the crossing on the main
track to move off. He then waited fifteen minutes longer for a
caboose which was standing near him to be pulled off the cross-
ing by the train of which it was the rear car. This car was
standing about three feet on and over the crossing, leaving an
open, planked roadway unobstructed, from eleven to seventeen
feet wide. While waiting near the cars for the time stated his
horse showed no signs of fear. It was gentle, accustomed to the
cars, and had never before taken fright at them. In riding the
horse over the street-crossing near the rear end of the standing
caboose, it became frightened and threw its rider to the ground,
causing his injury. *Held*, that the negligence of the railway
company in permitting the caboose to stand over the planked
crossing was not the proximate cause of the injury.

2. —— *Railway-car in Street.* A railway-car is not a thing
which of itself is so terrifying in appearance that its presence in
a street of a city is *per se* a nuisance.

3. NEGLIGENCE—*Finding Based upon Probability.* A jury ought
not to find the existence of negligence because of a mere proba-
bility that some one was wanting in care unless such probability
is based upon rational grounds and unless it has support in the
evidence.

Error from Wilson district court; L. STILLWELL,
judge. Opinion filed February 8, 1902. Reversed.

*A. A. Hurd*, and *O. J. Wood*, for plaintiff in error.

*S. S. Kirkpatrick & Son*, for defendant in error.

The opinion of the court was delivered by

SMITH, J. : Ohio street runs east and west through
the city of Fredonia. It is crossed at right angles by

the main track and a side-track of the Atchison, Topeka & Santa Fe Railway Company. Defendant in error is a farmer. He rode into town on horseback in the morning, and on his way home in the afternoon his progress was obstructed by a train of cars standing on the main line of the railway. A caboose car on the rear end of another train was standing on the switch track over part of a plank crossing to the distance of about three feet. The width of this planked crossing was between fourteen and twenty feet. The plaintiff below waited from ten to fifteen minutes for the train on the main track, which blocked the crossing, to pull up, and ten or fifteen minutes longer for the train to which the caboose was attached to move. The latter stood still until after the accident.

Plaintiff below testified to the foregoing facts, and further, that the horse upon which he was riding was considered by him to be a very gentle animal; that it was nine years old; that his little girl had driven it to a buggy many times; that the horse was accustomed to cars; that trains run near his farm and it never became frightened at them. While he waited at the crossing Mr. Morris was sitting on his horse within a rod or so of the cars. When he rode forward the horse showed no signs of fear until it was on the crossing immediately south of the caboose. It then took fright, throwing its rider to the ground between the rails of the side-track, causing him to be severely injured. The following question and answer appear in the testimony of the plaintiff below:

"Ques. If I understand you correctly, your horse went right up to the rear of the caboose or way-car before the horse commenced rearing and plunging? Ans. Just as I came up is when she began to scare; just as I came up to go around. She walked right up

until she was going to go around; she became scared at something.''

We can perceive no causal connection between the negligence of the railway company in permitting the car to stand over the end of the crossing and the injuries sustained by defendant in error occasioned by the fright of his horse. There is no testimony in the record showing the cause of its fright. It cannot be assumed that the end of the caboose presented a more terrorizing spectacle than the side of it, near which the horse stood for thirty minutes before the accident without fear or uneasiness. The moving cars on the main track towards which the horse faced did not alarm or disturb it. It is inexplicable why this gentle animal, accustomed to such sights, should suddenly become terror-stricken when crossing the track at the rear of the caboose, when it stood indifferent to the presence of the same car, and other cars in motion, all likely to produce fright, for more than half an hour before the accident.

The sole negligence charged against the railway company is that it blocked about three feet of the plank crossing with its caboose. This, however, left the traveler an open planked way between eleven and seventeen feet wide which was nowise obstructed. It would have been a negligent act had the railway company blocked with its cars a street-crossing for an unreasonable length of time located one block north, south, or any shorter distance from this one. Yet, if this horse had frightened at cars standing over such crossing and injured its rider, on what logical basis could an argument be founded that the negligence of the railway company was the proximate cause of the injury, when the same train of cars might have stood for an indefinite length of time much nearer to the

traveler between the place of the accident and the next street-crossing without subjecting the railway company to a charge of negligence? The testimony of the injured party was that the horse scared at "something." The jury concluded that the south end of the caboose was the cause. The horse was unusually docile, familiar with the appearance of such objects, and never before took fright. It cannot be said that the way-car or caboose was a thing which of itself was so terrifying in appearance that its presence in the street was *per se* a nuisance.

In *Chicago Great Western Ry. Co. v. Kenyon*, 70 Ill. App. 567, 569, 570, it was said:

"There is nothing in the sight of an ordinary box car standing still which is more likely to cause fright in an ordinarily gentle horse than in a dozen other things of common and general use on our streets and in public places every day. A street-car, a steam thrashing-machine or a fire-engine might frighten some horses, even when standing still, and yet they are not regarded as nuisances *per se*, nor dangerous to have in common use, if handled with due care.

"The particular act complained of as negligence was the fact of leaving at and upon the highway crossing a vehicle or article which would naturally frighten horses of ordinary gentleness. In fact, the right of action was based upon the assumption that the car there standing was a thing which would naturally scare usually gentle horses. We are not prepared to yield our assent to such a proposition. In the business of the present day, the transportation of goods and passengers by railroad is just as essential and necessary as the transportation of persons in vehicles drawn by horses, and the courts must recognize the necessity for the use of locomotives and cars, and the switching at stations, having due regard, of course, to the rights of the public in the use of the highways intersected by railroads. We hold, therefore, that the mere fact, standing alone, that appellant placed this box car upon

the track, even though it partially obstructed the highway, was not actionable negligence unless permitted to remain there for an unreasonable length of time, and not even then upon the ground that it was an object naturally calculated to frighten ordinarily gentle horses."

In determining that the horse received its fright at the sight of the end of the caboose, we think that the jury indulged in conjecture merely. They roamed with unreasoning license in a wide field of speculation. There was a lack of evidence to support the conclusion reached. The mere fact that the car stood where it did for thirty minutes, considering the natural disposition of the horse and its habit of not taking alarm at other times when near to railroad-trains, and the absence of fright at this time until it was halfway across the track, ought not to justify a finding that the negligence of the company was the proximate cause of the injury.

While questions of fact are for the jury to decide, yet a conclusion reached ought to be founded on evidence which fairly tends to support the finding. When a jury finds negligence to exist because of a probability that some one was lacking in care, such probability must be based upon rational grounds and have some support in the evidence introduced in the case.

The judgment of the court below will be reversed, with directions to the district court to sustain the demurrer to the evidence filed by the defendant below.

DOSTER, C. J., POLLOCK, J., concurring.