THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY v. M. W. PRIEST, *as Administrator of the estate of James Priest, deceased.*

RAILROAD TRACK — *Contributory Negligence in Crossing.* Where a person thoughtlessly walks upon the tracks of a railroad company without looking for moving cars or trains, or knowingly and recklessly, in the face of approaching cars, attempts to cross a track in front of the same, and is injured or killed thereby, his negligence is such as will bar any recovery. (*U. P. Rly. Co. v. Adams,* 33 Kas. 427; *Clark v. M. P. Rly. Co.,* 35 id. 350; *C. K. & W. Rld. Co. v. Fisher,* 49 id. 460.)

*Error from Sedgwick Common Pleas Court.*

ON the 2d day of August, 1887, James Priest, in crossing the tracks of a railroad operated by the Atchison, Topeka & Santa Fé Railroad Company, in Wichita, was run over by the cars of the company. Subsequently M. W. Priest, as administrator of the estate of James Priest, deceased, brought his action against the railroad company to recover $10,000 as damages, alleging —

"That James Priest, his intestate, was passing along a public highway in the city of Wichita on foot, and, in attempting to cross the track of the defendant, was, by the negligence of the defendant's servants, in the management of its cars upon its track, run over by the cars of the defendant, and then and there instantly killed; that his intestate, at the

time, and while attempting to cross the track of the defendant, was in the exercise of due care and caution on his part, and was run over and killed wholly by reason of the wrongful acts and negligence of the servants of the defendant in the management and control of its cars on its track in prosecuting the business of the defendant."

Trial had before the court with a jury. The following are the special findings of the jury:

"1. Is it a fact that the deceased at the time of his death was about 70 years of age; was occupied as a huckster, whenever he did anything, in buying butter, poultry, and produce, and selling them on foot, in the city of Wichita, and that he had no office or storeroom in which such business was conducted? A. Yes.

"2. Is it not a fact, that at the time of the injury, the plaintiff's intestate was in full possession of his faculties of sight? A. Yes.

"3. Is it not a fact that it was a fair day when the injury was done, and about 2 o'clock in the afternoon? A. Yes.

"4. Is it not a fact that the center of the main track of the railroad operated by the defendant runs north and south and is straight for a long distance on each side of where the injury occurred, and that the center of said main track is about 80 feet east of the west line of Fifth avenue? A. Yes.

"5. Is it not a fact that plaintiff's intestate approached the point where the accident occurred from an easterly direction, and that in approaching said point there was nothing to prevent him from seeing the approaching cars from any direction, on the main or side track of the defendant? A. Yes.

"6. If you find from the evidence that there was anything to prevent the plaintiff's intestate from seeing the approaching cars as he approached the tracks, describe what it was, giving location. A. ———

"7. Is it not a fact that the Wichita & Southwestern railroad was rightfully constructed at the point where the injury occurred, and that said railroad was being operated by the defendant? A. We presume so.

"8. Is it not a fact that the injury occurred on the Wichita & Southwestern railroad, and the said road was operated by the defendant at that time? A. Yes.

"9. Is it not a fact that the injury occurred on the west rail of the main track, between First and Second streets, a lit-

2 — 50 KAS.

tle north of the center of the block, and about 77 feet east of the west line of Fifth avenue? A. Yes, about center of block.

"10. Is it not a fact that the Wichita & Southwestern Railroad Company owned in fee a strip of land 50 feet in width along the east side of Fifth avenue, in Meade's addition to the city of Wichita? A. No."

The jury returned a verdict against the railroad company for $3,500. Subsequently, judgment was rendered in favor of the plaintiff and against the company, upon the verdict, for the amount returned. The railroad company excepted, and brings the case here.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error:

As it is manifest from the evidence that, had deceased looked before he attempted to cross the tracks, he could have seen the approaching cars, he must be held guilty of contributory negligence, either in failing to look, or, if he looked, in attempting to cross the tracks in front of the approaching cars, and cannot recover even though the accident happened in a public highway. *A. T. & S. F. Rld. Co. v. Townsend,* 39 Kas. 119; *U. P. Rly. Co. v. Adams,* 33 id. 427; Beach, Contr. Neg., § 63; *Durbin v. Oregon Rly. & Nav. Co.,* 17 Pac. Rep. 7. See, also, *Fletcher v. Fitchburg Rld. Co.,* 21 N. E. Rep. 332; *Blight v. C. & A. Rld. Co.,* 21 Atl. Rep. 995; *Pa. Rld. Co. v. Bell,* 15 id. 561; *Marland v. P. & L. E. Rld. Co.,* 16 id. 623, 624; *C. & E. Ill. Rld. Co. v. Hedges,* 37 Am. & Eng. Rld. Cas. 516; *Railroad Co. v. Houston,* 95 U. S. 702; *Galveston &c. Rld. Co. v. Bracken,* 14 Am. & Eng. Rld. Cas. 691; *Gebhardt v. Detroit &c. Rld. Co.,* 44 N.W. Rep. 1045; *Korrady v. Lake Shore &c. Rld. Co.,* 29 N. E. Rep. 1069; *Kelley v. H. & St. J. Rld. Co.,* 13 Am. & Eng. Rld. Cas. 638; same case, 75 Mo. 138; *Moody v. Railroad,* 68 id. 470; *Md. Cent. Rld. Co. v. Neuber,* 62 Md. 391; same case, 19 Am. & Eng. Rld. Cas. 264; *Grows v. M. C. Rld. Co.,* 67 Me. 100; *Tolman v. S. B. & N. Rld. Co.,* 98 N. Y. 198; *C. & A. Rld. Co. v. Jacobs,* 63 Ill. 178.

*Stanley & Hume,* for defendant in error:

Was it shown that the deceased was guilty of such contributory negligence as precludes a recovery? We submit that contributory negligence is never presumed, and that the burden of showing it rests on the defendant. The determination of the question must be reached by a consideration of all the circumstances of the particular transaction. There can be no arbitrary rule to the effect that every man approaching a railroad track must in every case stop and look and listen for approaching cars before attempting to cross. He may see cars approaching and still not be guilty of negligence in attempting to cross in front of them. The same degree of caution which prudence would dictate to the driver of a team would not be a fair rule to apply to a man on foot. It might not be imprudent for the latter to attempt to cross, while under the same condition of things it would be gross negligence for the former to try it. Therefore, we say that the doctrine of the cases cited by plaintiff in error requiring the travelers on the highway to look and listen cannot be made to control the deceased under the circumstances of this case.

The making of flying switches in populous districts of cities has long been judicially condemned as criminal negligence, even as against trespassers on the track. See *Brown v. N. Y. C. Rld. Co.,* 32 N. Y. 597; Beach, Contr. Neg. (1st ed.), p. 223; id. (2d ed.), § 217, and authorities cited. Even if deceased was a trespasser upon the track, the company, being guilty of gross negligence toward him, is liable. *S. & N. A. Rld. Co. v. Donovan,* 4 South. Rep. 119; *Shelby v. C. N. O. & T. P. Rly. Co.,* 3 S. W. Rep. 157; *W. & W. Rld. Co. v. Davis,* 37 Kas. 743.

Sending these cars on their wild career unattended by any brakeman or other means of controlling them estops the company to say that the accident could not have been avoided by ordinary care on its part after the presence of the deceased on the track might have been discovered by a brakeman, if

brakemen had been placed where they belonged. See *Kay v. Pa. Rld. Co.*, 65 Pa. St. 269.

In considering the question of contributory negligence in this case, it must be constantly borne in mind that contributory negligence on the part of the deceased cannot be presumed. *St. L. & S. F. Rly. Co. v. Weaver*, 35 Kas. 424. See, also, *Schum v. Pa. Rld. Co.*, 107 Pa. St. 8. It must be borne in mind that, in every case where the "look-and-listen" doctrine has been applied, it has been in regard to an *approaching, moving train*, the progress and direction of which could not be mistaken. The train being headed in an opposite direction, the deceased was not bound to anticipate that it would start backward without warning. The court cannot ignore the universal custom of giving warning when cars are started, everywhere and under all circumstances, nor the fact of the universal reliance of all people acquainted with trains running on such warning being given. See *McWilliams v. Railroad Co.*, 31 Mich. 274; *Robinson v. Railroad Co.*, 48 Cal. 409.

The opinion of the court was delivered by

HORTON, C. J.: The facts in this case are undisputed, except upon the part of the plaintiff below it is claimed that the railroad tracks were laid along a public street, and that the point where the accident happened was an alleyway or crossing, used by the public generally, connecting with the street along which the tracks were laid, and that it was the custom of the public to cross and recross the tracks, both as footmen and with teams. On the part of the railroad company, it is asserted that the place of the accident is upon the private grounds of the company, and that the deceased was a trespasser thereon at the time of the accident. In disposing of this case, we assume the claim of the plaintiff below to be true, and that the place where the injury occurred was used as a crossing by the public, and that the deceased was using such crossing or alleyway at the time he was killed. James Robertson, a colored man, called by the plaintiff below, was

the only witness, so far as it appears from the record, who saw James Priest, deceased, just before and at the time he was killed, upon the track of the railroad company. He testified very clearly as to all the facts concerning the matter. Priest, at the time of his death, was 70 years of age, and by occupation a huckster. He lived with his wife and a son, 28 years of age, at 442 Washington avenue, in Wichita, on the east side, but not very far from the railroad tracks. After dinner, on the day he was killed, he started to go on foot into the city with his two sons and their wives, who intended to do a little trading. He went with them as far as the corner of Mosley and Third streets, and then parted from them, taking a little bypath going southwest towards the railroad. He said, "He often went that way, and that it was nearer to town." He wanted the others to go the same way, but they "thought it better to take the sidewalk on account of the women with them." After they separated, they never saw him alive. Between First and Second streets, in the city of Wichita, and on the east side of Fifth avenue, there is a main line of railroad, and west of it, towards Fifth avenue, there are two side tracks. The distance between the main track and the first side track on the west is four or five feet. After Priest separated from his sons and their wives, he proceeded along the bypath until a little north of the center between First and Second streets, where he attempted to cross over the tracks. As he was about crossing the first side track towards the west, he discovered some cars coming toward him; he jumped back, and was struck by cars coming down the main track in the same direction and instantly killed. The switch on the main track is about 100 feet north from where Priest was struck. About the time he was crossing, three cars were detached from the engine and kicked down on the main line, and two cars were detached and kicked down the first side track. The cars on the side track were a car length ahead of the cars which came down the main track. On the east side of the main line the land is open and unoccupied, and on that side there are only two houses in the block; the

other side is partly built up. The main track of the railroad runs north and south, and is straight for a long distance on each side of the place where the accident occurred. The center of the main track is about 80 feet east of the west line of Fifth avenue. The accident occurred between 2 and 3 o'clock in the afternoon. The day was clear, the sun shining, and Priest, before being struck by the cars, was in full possession of his faculties of sight. He was a little hard of hearing, but of this defect he was well aware. The jury specially found:

"That the accident occurred on the west rail of the main track, between First and Second streets, about the center of the block, and 77 feet east of the west line of Fifth avenue;" and they also specially found "that Priest approached the point where the accident occurred from an easterly direction, and that in approaching that point there was nothing to prevent him from seeing the approaching cars from any direction on the main or side track of the railroad."

It has been frequently ruled by this court, that it is the duty of any person intending to cross a railroad track where he knows that trains frequently pass, and where he knows that one is likely to pass at any moment, to look as well as listen, and if he fails to perform this duty, and by reason thereof injury results to him from a moving car or train, he cannot recover from the railway company. (*U. P. Rly. Co. v. Adams*, 33 Kas. 427; *Clark v. M. P. Rly. Co.*, 35 id. 350; *C. K. & W. Rld. Co. v. Fisher*, 49 id. 460; 30 Pac. Rep. 462; *Railroad Co. v. Houston*, 95 U. S. 702.)

Upon the facts, which are uncontradicted, and under the law as already decided by this court, the plaintiff below was not entitled to any recovery. The place where Priest was killed was largely used as the yards of the railroad company for switching purposes. He was familiar with the location, having crossed there on many occasions and having lived for a long time in the vicinity. If he had looked, and stopped for the cars to pass, as Robertson did, his life would have been saved. Robertson testified that he was on the west side of the tracks at the time the cars were coming down, waiting to cross over, with his two little children. His opportunities

to see the cars coming were no better than those of Priest, the deceased. It cannot be said that the cars were detached from the engine and kicked down with no opportunity for the deceased to see. Had he used his senses, he could not have failed to know and see the cars which were coming down on the main and side tracks. Whatever presumption might be indulged in, in the absence of all evidence, sufficient is disclosed to show that the deceased must have walked thoughtlessly upon the tracks without looking, or if he saw the cars coming, he recklessly undertook to cross the track, instead of waiting for the cars to pass, as Robertson did. There is no allegation in the petition of gross negligence upon the part of the railroad company. Conceding that the company was negligent in detaching its cars suddenly, and pushing or kicking them down over a crossing used by the public without brakemen or signals, yet the deceased, considering his opportunities to know and see all of this, was also guilty of such negligence as bars any recovery.

We are referred to several cases by counsel for plaintiff below, which they claim sustain the judgment. These cases, however, are all different from the one at bar.

In *Railroad Co. v. Davis*, 37 Kas. 743, the plaintiff testified that he looked north and south, expecting to see a train; that a gale of wind was blowing, and it was very dusty; that he saw the cars on the side track, and looked to see whether an engine was behind them, and saw none, and the fact that the train was moving backwards, are questions to go to the jury, with the fact that the train was in view for some two blocks south of the crossing, and might have been seen. It was perhaps seen by the plaintiff, and mistaken, under the above conditions of the weather and the character of the train, and he thought it to be on the side track. But in that case it was expressly stated, that —

"The rule seems to be well settled in this state, that before a person can recover for injuries received in crossing a railroad at a public road or street, he must, before attempting to

cross, recognize the danger and make use of the senses of hearing and seeing in determining whether a train is in dangerous proximity; and if he neglects this duty and ventures blindly upon the track, without making an effort to ascertain whether a train is approaching, that he does so at his peril."

In *Brown v. Railroad Co.*, 52 N. Y. 597, the plaintiff sustained injuries by a collision with a railroad car while in a stage in which she was a passenger. In that case, the stage was moving south, and in approaching the crossing from the north the view of the railroad was greatly obstructed by the houses, trees, shrubbery, and fences, so that the approaching train could not well be seen till the traveler was within a few rods of the iron track.

In *Kay v. Railroad Co.*, 65 Pa. St. 269, the action was for injury to a child only 19 months old. In such a case, of course, an infant is not required to use the care and caution of an adult.

In *Schum v. Railroad Co.*, 107 Pa. St. 8, at the point where the accident occurred the carriage road crossed the railroad at an acute angle, and in the space north of the railroad and east of the carriage road was a field of corn. In the angle nearer the railroad was a willow tree and several locust trees and bushes. These obstructions, according to the testimony, so obscured the view of the railroad that a traveler approaching it from the north on the carriage road could not see the railroad toward the east until he arrived within about 10 yards of the track, and then it was visible for only 50 yards east of the crossing, where the railroad turned sharply to the north and was lost to view behind a bank.

In these cases referred to and other similar cases, under the facts and circumstances disclosed in them, what constituted negligence was a question for the jury and not for the court. If the deceased had been an infant, or if his sight, as well as his hearing, had been defective, or if, on account of obstructions, he was prevented from clearly seeing the approaching cars, we might say that the negligence in the case was for the jury and could not be determined by the court; but, in this

case, the duty of the deceased can be clearly defined—his failure to perform it is, of course, negligence, and must so be declared.

Within *McCarthy v. Railroad Co.*, 18 Kas. 46, and *Railroad Co. v. Brown*, 26 id. 443, the instruction concerning the measure of damages was erroneous and prejudicial; but, on account of the conclusion which we have reached upon the facts in the case, it is unnecessary to comment upon these or other matters discussed in the briefs.

Upon the evidence and findings of the jury, the defendant below was entitled to judgment.

The judgment of the court below will be reversed, and the cause remanded, with direction to enter judgment for the company.

All the Justices concurring.