THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. MILDRED N. POWERS, *Administratrix*.

No. 10205.

1. NEGLIGENCE — *instructions as to, must not authorize verdict for negligence not alleged.* Instructions to the jury should generally be limited in their scope to the issues presented by the pleadings. In an action to recover damages for wrongfully causing the death of a person killed at a railroad crossing, it is error to instruct that the jury may base a verdict for the plaintiff on the failure of the defendant to maintain gates, or keep a flagman at the crossing, where a failure to do so is not charged in the petition, and has not been relied on at the trial as a ground of recovery.

2. CONTRIBUTORY NEGLIGENCE — *whether it is, not to stop and look for train before driving across track where view obstructed, is for jury.* Whether the surroundings of a railroad crossing are such as to render it incumbent on a person, about to cross the railroad track with a team and wagon, to stop and ascertain whether a train of cars is approaching, is a question of fact to be determined by the jury; and, in a case where the view is obstructed by high banks, which prevent a person approaching the

crossing from seeing along the track for any considerable distance until he is nearly on the crossing, it is error for the court to charge, as a matter of law, that such person is not bound to stop before attempting to cross.

Error from Leavenworth District Court. Hon. Louis A. Myers, Judge. Opinion filed October 9, 1897. *Reversed.*

On the seventh day of August, 1891, Medora E. Lamsdale, while crossing the Atchison, Topeka & Santa Fe railroad in a spring wagon, at a crossing in Leavenworth County, was killed by a west-bound train. The team which hauled the wagon was driven by her husband, George E. Lamsdale. Ray and Sue Powers, brother and sister of the deceased, were also in the wagon at the time, and Miss Powers was also killed. Mr. Lamsdale and Ray Powers occupied the front seat and the two sisters the back seat. They came from Leavenworth, and were going north down a hill as they approached the crossing. The specific negligence charged in the petition consisted in running a train of cars at an unusual time with extraordinary speed without sounding the whistle, and in a place rendered peculiarly dangerous by the lay of the ground. The petition charges that the death of Mrs. Lamsdale was caused by the negligence of the defendant, without any fault or carelessness on her part. The answer of the defendant was a general denial, only. In the vicinity of the crossing, the wagon road passes through a cut, and the bank on the east side of the road is so high as to wholly obstruct the view of the railroad track in that direction until the track is nearly reached. For a distance of about 870 feet east from the crossing the railroad track is straight. It then curves toward the north, around a hill.

30—58 KAN.

In answer to special questions, the jury found that a person standing in the middle of the traveled part of the wagon read, eighteen feet south from the south rail of the railroad track, could see the track toward the east for a distance of only about ten feet beyond the cattle-guard on the south of the wagon road; and that a person standing twelve or thirteen feet south from the rail could barely see the track to the beginning of the curve. The accident occurred at about 7:30 P. M. According to the testimony on behalf of the plaintiff, the team was driven down the slope toward the track on a trot, part of the way, but as they approached the crossing the speed was slackened to a walk. The two young women were talking and laughing as they neared the track, though the jury found that Mrs. Lamsdale looked and listened for an approaching train. The driver testified that he looked and listened, and neither saw nor heard any sign of danger until the fore feet of his horses were about on the south rail, when he saw an engine just beyond the cattle-guard; that he then endeavored to stop the horses, but before he could do so the engine struck them, and he was rendered insensible for a short time. The jury found that the whistle on the engine was blown as it came around the curve east of the crossing, that the bell was ringing as the train approached the crossing, and that the horses did not stop before going upon the track. Both Mr. and Mrs. Lamsdale were well acquainted with the crossing and its surroundings, having lived in the immediate neighborhood.

In the general charge to the jury the court gave the following:

" It is claimed on the part of the plaintiff in this case that the point at which the disaster occurred, to-wit, the crossing, is a dangerous place, with reference

to pedestrians or others on the highway crossing it. Now, if the railway company that constructed the road, or the company by which it was run, if it was so operating it, had left the road in its construction, or afterwards, in a condition so as to be peculiarly dangerous to persons passing on the highway, then a greater amount of care in running the road across that highway would devolve upon the railway company than there would under other circumstances. In other words, if the railway company constructing this road leaves it in a very dangerous condition as to its intersection with the highway, a corresponding amount of care would devolve upon the railway company operating the road to obviate disaster to the people on the highway. What the additional precautions might be, is a question for the jury. It is proper for the jury to consider whether, without greatly interfering with the business of the railway, they could have added precautions, additional appliances, that would have rendered the place, under the circumstances (it being, if the jury shall so find, a dangerous place), less hazardous to persons traveling along the highway. What it should be is a question for the jury. You might come to the conclusion that they ought to have delayed their train ; or that they ought to have whistled from a point away back continuously down to the crossing ; or that they ought to have rung the bell further back ; or that they should have put in gates or placed flagmen, or whatever else. It is for the jury to determine whether they did all that was reasonable, if this was a peculiarly dangerous place, to protect people on the highway from danger. If they did not, then they would be negligent.''

At the request of the plaintiff the following instructions were also given :

''4th. If the jury believe from the evidence that, on the seventh day of August, A. D. 1891, the Atchison, Topeka & Santa Fe Railroad Company, in operating a railroad in this county by an engineer or other employee thereof, by any wrongful act or omission, caused the death of Medora E. Lamsdale by running

a train consisting of a locomotive engine and train of cars against a team of horses and a spring wagon in which said Medora E. Lamsdale was, with others, at the time passing along a public road at a place where such railroad crosses such public road, and that said Medora E. Lamsdale left two children still surviving her, then the jury should find for the plaintiff, who sues as administratrix of the estate of Medora E. Lamsdale, and assess her damages at the amount of damage to said children caused by such killing of Medora E. Lamsdale, not exceeding the sum of ten thousand dollars."

"5th. If the jury believe from the evidence that, at the time Medora E. Lamsdale was killed, she, with others in the wagon with her, was passing along a public road over a railroad crossing at a time later than the usual or regular time for the train to pass that crossing, and that such crossing was so frequently passed over by persons passing along such road as to be a much traveled road, and that the whistle attached to the locomotive in that train was not sounded three times, as much as eighty rods from the place of such crossing, and that because of intervening obstacles, such as hills, or curves and weeds, the view of those approaching the crossing from the direction in which Medora E. Lamsdale then approached said crossing was obstructed to such an extent as that because thereof, and of the omission of so sounding such whistle at such eighty rods distance from the place of crossing, and of the rate of speed at which that train then approached said crossing, the accident, by which said Medora E. Lamsdale was killed occurred, then it was not the duty of said decedent, or any of those in the wagon with her, to have stopped before passing, or attempting to pass, over the crossing, unless by some means those in the wagon had actual knowledge of the approach of the train in time to have avoided the collision by the use of such diligence as should reasonably be expected of persons so situated. But neither Medora E. Lamsdale nor the driver of the team would be guilty of such contributory negligence as would prevent a recovery in this action by the plaintiff, by merely failing to do the very best that

could possibly have been done, if they were suddenly placed in great peril without reasonable notice or cause to expect a train would pass the crossing at that time."

The jury returned a general verdict in favor of the plaintiff for six thousand dollars, on which judgment was entered. The defendant now asks the reversal of this judgment.

*A. A. Hurd* and *Stambaugh & Hurd*, for plaintiff in error.

*S. E. & L. B. Wheat*, for defendant in error.

ALLEN, J. Objections are made to the consideration of the errors alleged in this case on the ground that the specifications in the brief for the plaintiff in error are insufficient; but the objection appears to be without merit. The objection, also urged, that the case-made fails to show that it contains all the evidence and instructions, is equally untenable. The specific negligence charged in the petition relates entirely to the operation and management of the train which caused the death of the plaintiff's intestate. It was not charged that it was the duty of the

1. Instructions limited to issues presented. Railroad Company to put in gates, or station a flagman, at this crossing. Yet the court, in its general charge, directed the jury that it was for them to determine whether the Railroad Company did all that was reasonable to protect people on the highway from danger, and that they might come to the conclusion " that it should have put in gates, or placed flagmen, or whatever else," and if it did not do what the jury regarded as necessary under the circumstances it would be negligent. This was erroneous, under the pleadings and the evidence.

The fourth instruction asked by the plaintiff and given, is defective in that it fails to confine the jury

to the specific negligence charged in the petition, and also omits all reference to contributory negligence on the part of Mrs. Lamsdale.

While the answer of the defendant does not charge contributory negligence, the plaintiff's petition alleges that Mrs. Lamsdale was killed by reason of the negligence of the defendant, and without any fault or negligence on her own part; and the case was tried as though contributory negligence on her part was an issue in the case. Under these circumstances, we think it was incumbent on the court to correctly charge the jury with reference to the duty resting on Mrs. Lamsdale to take due precautions for her own safety, and the legal effect of her failure to do so.

The fifth instruction asked by the plaintiff and given, is especially erroneous, and on it a reversal of the judgment is mainly based. The jury were there told that, when approaching a crossing rendered peculiarly dangerous by the lay of the ground, which obscured the view of the track, "it was not the duty of said decedent, nor of any of those in the wagon with her, to have stopped before passing, or attempting to pass, over the crossing, unless by some means those in the wagon had actual knowledge of the approach of the train in time to have avoided the collision by the use of such diligence as should reasonably have been expected of persons so situated." Whether

2. Whether certain fact contributory negligence, for jury.

or not, they ought, under the circumstances, to have stopped, and what precautions they ought to have taken to ascertain whether a train was approaching, were for the jury to determine. *C. R. I. & P. Rly. Co. v. Williams*, 56 Kan. 333. While it was incumbent on the Railroad Company to use care commensurate with the peculiar dangers of the crossing, in order to avoid accident, it was equally incumbent on the persons

crossing the track to care for their own safety, and to be vigilant in avoiding any train which might be passing on the railroad.

Complaint is also made of the refusal of the court to instruct that any negligence on the part of the driver should be imputed to the plaintiff; but in this we find no error. *City of Leavenworth v. Hatch*, 57 Kan. 57; *Reading Township v. Telfer*, 57 id. 798.

For the errors in the instructions given, the judgment must be reversed and the cause remanded for a new trial.