THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY
COMPANY v. P. C. LACY.

No. 15,663.   (97 Pac. 1025.)

SYLLABUS BY THE COURT.

PERSONAL INJURIES—*Wanton Negligence—Evidence—Proximate
Cause.*   Plaintiff's intestate was· riding in the caboose of a
freight-train, with the permission of the conductor, but with-
out having paid or. offering to pay any fare, and under such
circumstances that the railway company owed him no duty
except not to injure him wilfully or wantonly.   While the
train to which the caboose was attached was standing at a
station, in the daytime, a freight-train following ran into
the caboose, demolishing it, and the deceased received in-
juries from which he died.   In an action against the railway
company to recover for his wrongful death, on the ground
that the injury was caused by the reckless and wanton negli-
gence of the company's employees, *held*:   (1) That the fact
that a collision occurred is not *prima facie* evidence that it
was caused by reckless or wanton negligence.   In such a case,
before the railway· company can be held liable. there must be
some fact or circumstance in evidence from which the natural
and reasonable inference arises that the injury was caused by
the reckless or wanton negligence of the employees of the
company.   (2) The evidence in this case examined and held
not sufficient to justify a recovery on the ground that the in-
jury was caused by the reckless or wanton negligence of the
employees of the defendant.   (3) Upon the findings of the
jury that the engineer of the second train saw the first train
standing on the track at the station when his train was more
than a mile and a half distant, no recovery can be based upon
the failure of the crew in charge of the forward train to send
back a flagman to warn the rear train, as such failure could
not have been the proximate cause of the injury.

Error from Shawnee district court; ALSTON W.
DANA, judge.   Opinion filed October 10, 1908.   Re-
versed.

*M. A. Low,* and *Paul E. Walker,* for plaintiff in error.

*Lee Monroe, W. F. Schoch,* and *George A. Kline,* for
defendant in error.

· The opinion of the court was delivered by

PORTER, J.: This action was brought by the father of M. J. Lacy to recover damages for the death of his son. The jury returned a verdict in favor of the plaintiff for $1995, and judgment was rendered thereon, which the railway company seeks to reverse.

The facts which are not disputed are that on the evening of March 30, 1904, the deceased, who was an experienced railroad man, requested a conductor in charge of a through freight-train which was about to leave Dalhart, Tex., for Liberal, Kan., to allow him to ride free of charge from Dalhart to Liberal. The conductor refused his request, and told him that the rules of the company did not permit any one to be carried on that train. The deceased then asked the conductor if he did not recognize and carry free of charge members of the brotherhood of railway trainmen. The conductor told him that if one of the brakemen who belonged to that order would vouch for his ·membership therein he would carry him. On the assurance of one of the brakemen that Lacy was a member of the order the conductor allowed him to enter the caboose.

The train upon which the deceased was riding was the first of two freight-trains running under manifold copies of the same orders from Dalhart to Liberal, and beyond. The rear train followed about ten minutes behind the forward train. The trains had common meeting points during the night, and the crews of both expected to take breakfast at Liberal. The first train reached Liberal at eleven minutes past seven o'clock in the morning, which was after daylight. It stopped on the main track, and the crew went to breakfast. While this train was standing on the main track at the station the rear train ran into it, demolished the caboose in which Lacy was asleep, and he received injuries which resulted in his death.

The petition alleged that Lacy's death was directly

caused by the gross and wanton negligence and reckless conduct of the employees of the defendant in charge of the two trains. The negligence alleged is: (1) That the crew in charge of the forward train failed to send back a flagman to warn the rear train; (2) that the engineer of the rear train failed to give warning of the approach of his train, and recklessly and wantonly ran his engine into the caboose.

The errors complained of are the refusal to sustain a demurrer to the plaintiff's evidence, the refusal to give a peremptory instruction directing a verdict in favor of the defendant on the special findings, and the denial of the motion for a new trial.

The jury in answer to special questions found that Lacy had been a brakeman and a conductor on other roads for a number of years previous, and that he requested the conductor to carry him free of charge; that he neither paid nor offered to pay fare, nor presented a ticket, pass or permit, and intended to ride without the payment of fare; that the train was one on which passengers were not carried, under the rules and regulations of the company; that the conductor had no right to carry him free of charge or on the train in question; that Lacy had no reasonable cause to believe that the conductor had such authority; and that he had no right to be on the train.

The railway company claims that the deceased was a trespasser. On the other hand, it is claimed that he was on the train by the permission of the conductor, and was therefore a licensee. For the purpose of this case, at least, the distinction is unimportant, for there was no claim in the petition or on the trial that the relation of carrier and passenger existed between the railway company and the deceased. The action was brought, and the trial proceeded, upon the theory that the railway company could only be liable for such injuries as were occasioned by the reckless or wanton negligence of its servants. The jury were instructed

that no liability was claimed in consequence of common, or ordinary, negligence. As observed, the jury made a finding that the deceased had no right to be upon the train. The instructions told the jury that, if they so found, the railway company owed him no duty except to abstain from recklessly or wantonly injuring him. The vital question in the case, therefore, is whether there is sufficient evidence to justify a recovery on the ground that Lacy's death was caused by the reckless or wanton negligence of the employees of defendant.

The first claim of negligence—the failure of the employees of the forward train to send back a flagman to warn the second train—is entirely eliminated by the special findings. The jury found, upon evidence about which there can be no dispute, that it was not the custom of trains stopping at Liberal in the daytime to guard the rear by sending back a flagman, for the reason that the track from the west is straight for a mile and three-quarters, and slightly up grade, and that a train standing at the station could be seen by the engineer on the second train, under the circumstances and conditions existing at the time of the accident, for a distance of one and one-half or two miles. They also found that the engineer of the second train saw the first train at a distance of a mile and a half, and, in addition, that the engineer and crew of the second train knew that the first train would stop on the main track at Liberal. So that, if the jury had based the general verdict on the ground of negligence of the crew of the first train in failing to send back a flagman, it could not be permitted to stand. Whether negligence or not, the failure to send back a flagman could not have been the proximate cause of the accident. The only object of sending back a flagman would have been to warn the second train of that which the crew of the second train had knowledge long before they could have seen a flagman. The situation is like that

in *Railway Co. v. Wheeler* (on rehearing), 70 Kan. 760, 83 Pac. 27, where the negligence alleged was in failing to give the statutory signals. The jury in that case made a finding that the person in charge of the injured cattle saw the approaching train when it was half a mile distant from him. It was held that the failure to sound the whistle eighty rods from the crossing could not have been the proximate cause of the injury.

The second ground of negligence alleged is that the engineer of the rear train failed to warn the trainmen of the forward train of the approach of his train, and that he recklessly and wantonly ran his engine into the caboose. No affirmative testimony was offered by the plaintiff as to what the engineer did or failed to do in the management of his train, except that a witness testified that when the danger signal was sounded the train was about 300 yards from the caboose. Testimony was also offered showing the force of the collision, and that the train was running twenty-five miles an hour when it struck the caboose. Proof was also offered that it was the duty of the engineer in approaching a station to have his train under control so he could stop it anywhere. Plaintiff's case rests, therefore, largely upon the natural inference to be drawn from the fact of a collision in the daytime on a straight track, where the engineer of the rear train had the forward train in plain view for more than a mile and a half. The fact that a collision occurred is not *prima facie* evidence that it was caused wantonly. There must be some fact or circumstance in evidence from which the natural or reasonable inference arises that it was caused by the reckless or wanton conduct of some one. While negligence may be inferred from other facts in evidence, the inference must be a natural and reasonable one. (*A. T. & S. F. Rld. Co. v. Brassfield*, 51 Kan. 167, 32 Pac. 814.) In *Railway Co. v.*

*Morris,* 64 Kan. 411, 67 Pac. 837, Mr. Justice Smith, speaking for the court, said:

"While questions of fact are for the jury to decide, yet a conclusion reached ought to be founded on evidence which fairly tends to support the finding. When a jury finds negligence to exist because of a probability that some one was lacking in care, such probability must be based upon rational grounds and have some support in the evidence introduced in the case." (Page 415.)

In the case at bar some weight must naturally be given to the presumption that out of regard for his own safety and that of the other persons on the train, as well as for the property of the railway company, the engineer acted neither wilfully nor in utter disregard of the natural consequences of his acts. On the part of the defendant the engineer of the rear train testified substantially as follows: He saw the forward train as he came up over the hill into Liberal; when he first saw it it was standing on the main track, just where he expected to find it, about one and one-half miles away from where he then was; he was running about twenty-five miles an hour; as soon as he got over the hill, and when about a mile or a mile and a quarter from the rear end of the forward train, he applied the air for the purpose of setting the brakes; this was about the distance from Liberal where the air was usually applied in order to stop at that place; the air did not hold and had no effect in slowing up the train; immediately thereafter he made a second application of the air, which did not have any effect on stopping or slowing up the train; he then applied the emergency brake, whistled for brakes, and signaled the forward train by two short blasts of the whistle; in the meantime he set the straight-air brake on the engine, and that took hold; he then reversed the engine and gave it steam, the effect of which was to make the engine work directly against itself; he stayed on the engine until it got within about three

car-lengths of the caboose on the forward train, and he saw that he could not stop it; at the time in question there was nothing on his train—no apparatus of any kind—which could have been used for the purpose of retarding the speed of the train that he did not use; he did not know why the air-brakes failed to work; if they had worked in the usual and ordinary manner his train would have stopped before reaching the rear. of the forward train; the brakes had been working first class during the night and from the time he left Dalhart until the time he made the application for the purpose of stopping at Liberal.

Among the special findings of the jury is the following:

"(65) Ques. Did the employees of the defendant railway company purposely cause the collision? Ans. Not purposely, but through negligence of the employees."

The term "negligence," without any qualification, usually means ordinary negligence. (*K. P. Rly. Co. v. Pointer*, 14 Kan. 37.) It was said in *K. P. Rly. Co. v. Whipple*, 39 Kan. 531, 18 Pac. 730: "In popular use, and by our decisions, 'recklessness' and 'wantonness' are stronger terms than mere, or ordinary, negligence." (Page 542.) Again, in the recent case of *Railway Co. v. Walters, ante*, p. 39, Mr. Justice Burch, speaking for the court, said:

"Reckless disregard of security, wantonness or other equivalent of bad faith and the wilful or malicious disposition to injure all involve something else than negligence." (Page 41.)

It is insisted that the language of the jury in answer to the special question should· be strictly interpreted as a finding that there was neither wilful nor wanton negligence, but only ordinary negligence, for which, in this case, the railway company can not be held liable. On the other hand, the general verdict can only be explained on the theory that the jury found that the death

Railway Co. v. Lacy.

of the deceased was occasioned by the wanton negligence of the engineer, and meant to find by the foregoing answer that there was no purpose or intent to inflict the injury.

It is not contended that there was any evidence of wilful negligence on the part of the engineer. To constitute wilful negligence there must be a design, purpose or intent to do wrong or to cause the injury. True, the courts and text-writers quite generally agree that recklessness amounting to an utter disregard of consequences will be held to supply the place of specific intent. (*Cincinnati, Indianapolis, St. Louis & Chicago R. R. Co. v. Cooper, Adm'r,* 120 Ind. 469, 22 N. E. 340, 6 L. R. A. 241, 16 Am. St. Rep. 334; *Louisville & Nashville Railroad Company v. Filbern's adm'x,* 69 Ky. 574, 99 Am. Dec. 690; Beach, Cont. Neg., 3d ed., 53.) And a reckless indifference to or disregard of the natural or probable consequences of doing or omitting to do an act, which is generally termed wanton negligence, carries with it the same liability as an injury inflicted by wilfulness. We deem it unnecessary to consider here the nice distinctions sometimes drawn by courts in respect of wilful negligence and wanton negligence. It is sufficient in our opinion that there was in this case an absence of affirmative or other testimony tending to show that the injury was occasioned by the wanton negligence of the engineer or that it was the result of that conscious disregard of, or reckless indifference to, the probable or natural consequences of his conduct which is usually termed wantonness.

In our opinion the trial court should have given a peremptory instruction to find for the defendant. Plaintiff in error urges that judgment should be directed in its favor, but, as observed, the special findings, construed with the general verdict, amount to a finding that the death of the deceased was caused by the reckless and wanton negligence of the engineer.

While we hold that the facts in evidence are not sufficient to justify such finding or to support the verdict, it is apparent that judgment can not be directed. The judgment is therefore reversed, and the cause remanded for another trial.