No. 19,060.

A. FRANK BUTTS, *Appellee*, v. THE ATCHISON, TOPEKA
& SANTA FE RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

RAILROADS—*Dangerous Crossing—Duty of Traveler—"Stop,
Look"—Contributory Negligence.* A traveler whose deafness
prevented him from hearing the warning signals of an ap-
proaching train at a dangerous crossing with which he was
familiar, drove upon the track and was struck by the train and
injured. His failure to stop and look from a position where he
could have seen the train in time to avoid the injury is con-
tributory negligence which will prevent his recovery in an
action against the railway company.

Appeal from Harvey district court; FRANK F. PRIGG,
judge. Opinion filed March 6, 1915. Reversed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* all
of Topeka, and *William Osmond*, of Great Bend, for the
appellant.

*Ezra Branine,* and *Harry W. Hart,* both of Newton,
for the appellee.

The opinion of the court was delivered by

PORTER, J.: This is a railway-crossing case in which
the plaintiff recovered a judgment, from which the
defendant appeals.

The material facts are not in dispute. They appear
from the plaintiff's testimony as well as by the special
findings of the jury. The accident occurred in the
railway yards at Newton, about half a mile south-
west of the station where First street crosses twelve
tracks at an angle of about 45 degrees. It occurred
on the eighth of these tracks, counting from where
the plaintiff approached the right of way. It was in
the middle of the afternoon of a bright, clear day in
September. The plaintiff was going in a southeasterly
direction, and was driving a horse and light road

wagon.   He was very deaf.   He was familiar with the
crossing and had traveled over it every day for several
years.   The train which struck him was a passenger
train, coming from the southwest, and the jury found
that it was running at an excessive rate of speed.
The engine bell was ringing from the time the train
entered the city limits up to the time of the accident,
but on account of the plaintiff's deafness he was un-
able to hear it.   After coming upon the right of way
there was a clear view of the railway tracks for a
distance of about a mile southwest, unless the view
was temporarily obstructed by the presence of cars
or engines upon some of the tracks.   The obstructions
which prevented the plaintiff from seeing the approach
of the train when he first came upon the right-of-way
consisted of cars standing on what is known as the
"stockyards track," and also a moving switch engine
with some cars attached which were upon the second
track from the place of the accident.   After reaching
this second track and passing the switch engine, plain-
tiff had an unobstructed view for one-half mile of the
track upon which the passenger train was approaching.
It was twenty-eight feet from the track where the
switch engine was to the track where he was struck,
looking at right angles, but if the plaintiff followed
the center of the street in the general direction he
was going, the distance was forty-eight feet between
the track upon which the switch engine stood and the
track where the accident occurred.   The plaintiff testi-
fied that he was looking and watching for trains, but
the undisputed facts disclosed by his evidence show
that this can not be true.   His horse's head was over
the first rail of the track when plaintiff discovered
the train.   The plat introduced by the plaintiff show-
ing the location of the tracks, and his own evidence
and that of other witnesses who testified for him, show
beyond controversy that he could have seen the pas-
senger train if he had looked after he reached the
track where the switch engine had obstructed his

view. He was then at least forty feet from the point at which he testified he first saw it.

The jury found that the railway company was negligent in running its train at an excessive rate of speed. Conceding the negligence of the company as established, the plaintiff's own negligence, under repeated decisions of this court, prevents his recovery. The jury made a finding that after the plaintiff entered upon the right of way there was no place where, if he had kept a constant lookout, he would have seen the approach of the train in time to avoid the accident, but this finding is in direct conflict with the undisputed facts as disclosed by all the testimony. The plaintiff testified that he first saw the approach of the train when his horse's head was over the first rail of the track. The track upon which the switch engine was moving, and which had up to that time obstructed his view, was twenty-eight feet in a direct line from the track where he was struck, but, as stated, the distance between the two tracks following the center of the street was forty-eight feet.

We may leave entirely out of consideration the various obstructions which interfered with plaintiff's view before he reached a place where the switch engine and cars on the second track no longer prevented him from seeing. After he reached this point he had, if he had looked, an unobstructed view for a great distance to the southwest, and must necessarily have seen the approaching train if he had looked in that direction. Because of his deafness he was obliged to rely entirely upon what he could see. In such a situation common prudence made it his duty to stop, if necessary, and look; but in any event, it certainly required that he look before driving his horse upon the track.

The duty of a traveler in approaching a railroad crossing has been so frequently stated in former decisions that it will only be necessary to refer to a few of them which demonstrate that the trial court should have sustained the demurrer to the evidence. The

passing switch engine and cars obstructed plaintiff's view and made it unsafe for him to proceed across this network of tracks until the switch engine and cars had passed and he could obtain a view of the other tracks. The obstruction was a temporary one, and ordinary care for his own safety required him to check his progress until the obstruction passed. Exactly the same principle was applied in the case of *C. K. & W. Rld. Co. v. Fisher,* 49 Kan. 460, 30 Pac. 462. In the opinion it was said:

"We think the judgment of the court below must be reversed. In our opinion, it is the duty of any person intending to cross a railroad track where he knows that trains frequently pass, and where he knows that one is likely to pass at any moment, to look as well as to listen, and if dust should temporarily obscure his view, to wait until the dust shall pass away before he attempts to cross." (p. 485.)

To the same general effect is *Bush v. Railroad Co.,* 62 Kan. 709, 64 Pac. 624; *Railroad Co. v. Willey,* 60 Kan. 819, 58 Pac. 472; *Carlson v. Railway Co.,* 66 Kan. 768, 71 Pac. 587; *Railway Co. v. Jenkins,* 74 Kan. 487, 87 Pac. 702, and 79 Kan. 17, 98 Pac. 208; *Bressler v. Railway Co.,* 74 Kan. 256, 86 Pac. 472; *Railway Co. v. Wheelbarger,* 75 Kan. 811, 88 Pac. 531; *Beech v. Railway Co.,* 85 Kan. 90, 116 Pac. 213; *Palmer v. Railway Co.,* 90 Kan. 57, 60 Pac. 736. In the case last cited it was said:

"Where a traveler, approaching a dangerous crossing at the rate of from six to eight miles an hour, where the track is obstructed, fails to stop to look or listen, and drives upon the track and is injured, he is guilty of contributory negligence, barring recovery." (Headnote.)

The judgment must be reversed and the cause remanded with directions to render judgment for the defendant.

JOHNSTON, C. J., and WEST, J., dissenting.