No. 19,909.

MARY J. JACOBS, *Appellee,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

### SYLLABUS BY THE COURT.

1. AUTOMOBILE—*Crossing Railroad Tracks—Failure to "Look and Listen"*—*Contributory Negligence.* It is such negligence as will prevent a recovery for injuries sustained for a driver of an automobile to attempt to cross a railroad track at a grade crossing without looking or listening for the approach of a train, although an electric warning bell is maintained at the crossing and the bell is not ringing.

2. SAME—*Enginemen Not Guilty of Wantonness.* Enginemen in charge of a locomotive attached to a passenger train, who cut off the steam and apply the air one quarter of a mile before reaching a street crossing in a small city, and who suppose that an electric warning bell stationed

at the crossing is ringing, are not guilty of wantonness, although they fail to ring the engine bell or sound the whistle for the crossing, and although they go through the city at the rate of forty-five miles per hour.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed February 12, 1916. Reversed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* and *Harlow Hurley,* all of Topeka, for the appellant.

*John W. Adams,* and *George W. Adams,* both of Wichita, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: In this action the plaintiff seeks to recover for the death of her husband caused by the negligence of the defendant. The defense was contributory negligence on the part of the deceased. The plaintiff recovered judgment. The defendant appeals.

John J. Jacobs, the husband of the plaintiff, met his death by driving his automobile on the defendant's tracks in front of a swiftly moving passenger train. This occurred on Saturday afternoon at the crossing of the principal street in Valley Center. The defendant maintained an electric bell at this crossing. The jury made special findings of fact as follows:

"2. For how long a distance east of the railroad track at the crossing in question could one traveling on the highway continuously have in sight a train stationed a quarter of a mile northward of the crossing? Ans. Twenty-eight feet.

"6. Was the electric bell at the crossing in question ringing when the said train approached said crossing? Ans. No.

"7. Were the engineer and fireman each at his post of duty and in his particular place on the engine as the train in question approached and passed over the crossing in question? Ans. Yes.

"8. How far was the engine from the crossing in question when the fireman first discovered that the automobile would probably not be stopped in time to avoid a collision with the engine? Ans. One hundred fifty feet.

"9. How far was the automobile from the crossing when the fireman first discovered that said automobile would probably not be stopped before it got on the crossing in the way of the engine? Ans. Fifteen feet.

"10. After the fireman on the engine discovered, if he did discover, that

the automobile would probably go upon the crossing in the way of the engine, what could have been done by him or the engineer that was not done to prevent the collision in question? Ans. Nothing.

"11. How far was the automobile in question from the crossing when the fireman first saw it approaching the crossing? Ans. Fifty feet.

"12. What particular place on the pilot or engine first came in contact with the automobile? Ans. Side of pilot back three feet from the point.

"13. How far from the crossing did the engineer make his service application of air as the train approached Valley Center, if same was made at all? Ans. One-quarter mile.

"14. What, if anything, would have prevented said Jacobs from seeing or hearing the approaching train in time to have avoided the collision if he had taken the pains to look and listen for same when he was about twenty-five feet from the crossing? Ans. Nothing.

"15. If you find that the engineer cut off steam before he came to the crossing, state how far from said crossing he made such cut off? Ans. One-quarter mile.

"16. If you find that the negligence of those in charge of the engine caused the injury and death in question, state in what such negligence consisted? Ans. Excessive speed.

"17. What was the usual rate of speed at which this mail train in question usually passed over the crossing in question at Valley Center prior to the date of the collision in question? Ans. Thirty-five miles.

"18. Was the said Jacobs guilty of negligence on his own part which contributed to his injury and death at the time and place in question? Ans. No.

"19. Did the engineer and fireman as they approached the crossing in question, suppose that the electric bell at the crossing would ring automatically as the engine approached the said crossing? Ans. Yes.

"21. Give speed of train at time of collision in question. Ans. Forty-five miles.

"24. At what rate of speed was the automobile running when twenty feet from the crossing? Ans. Ten miles.

"25. Name the different signals given of the approach to the crossing in question by the train in question. Ans. None."

1. The fourteenth finding establishes that the deceased did not look nor listen for the approach of a train before driving on the track. (*Beech v. Railway Co.*, 85 Kan. 90, 116 Pac. 213; *Cleveland, etc., R. Co. v. Coffman*, 30 Ind. App. 462, 64 N. E. 233; *Tobias v. Railroad Co.*, 103 Mich. 330, 61 N. W. 514.)

The vital question in this case is, Did the failure of the electric bell to ring relieve the deceased of the obligation to look and listen before attempting to cross the track?

The plaintiff seeks to have the rule in *McClain v. Railway*

*Co.,* 89 Kan. 24, 130 Pac. 646, applied in this case. There this court said:

"Ordinarily if a traveler proceeds across a railroad track without taking the precaution to ascertain if there is a train in dangerous proximity he does so at his peril. The application of this rule is modified to some extent by the circumstance that gates have been erected and watchmen employed at crossings. In such case a traveler is not required to exercise the same vigilance when he approaches a track as he would at crossings not so guarded." (p. 30.)

Human intelligence guarded the crossing and operated the gate in that case. In the present case an electrical, mechanical device was intended to give warning of approaching trains. Sometimes this bell would not ring when trains were passing, and at other times it rang when no train was in sight. An electric bell, which at most can be nothing but a warning of an approaching train to those who listen, can not be classed with a gate thrown across a street to prevent passing over railroad tracks; neither can it be classed with a flagman who stands in the street and stops those who desire to cross when there is danger. It is more nearly analogous to the locomotive bell and whistle. Failure to ring the engine bell or sound the whistle does not relieve a traveler from the duty to look and listen before attempting to cross a railroad track. If the plaintiff's contention in this respect is correct, a railroad increases its responsibility and liability by putting in electric bells at highway and street crossings. The object in putting in electric bells is to promote public safety, not to increase railroad liability. Silence of such a bell is not an invitation to cross railroad tracks without taking the ordinary precautions.

In *McSweeney v. Erie Railroad Co.,* 93 App. Div. 496, 87 N. Y. Sup. p. 836, an action for damages for injuries sustained at a crossing where there was an electric bell, the court said:

"The exercise of due care required the deceased, under the circumstances, to look and listen for an approaching train, and the mere fact that the stationary signal bell was not ringing did not relieve him of the imputation of negligence if he failed to exercise this degree of care." (p. 499.)

In that case judgment for the railroad was rendered at the close of the plaintiff's evidence. To the same effect is *Cleveland, etc., R. Co. v. Heine,* 28 Ind. App. 163, 62 N. E. 455. *Cleveland, etc., R. Co. v. Coffman,* 30 Ind. App. 462, 64 N. E.

233, supports this position, although a new trial was ordered. But a new trial was requested by the defendant, not judgment on the findings. The plaintiff cites *Tobias v. Railroad Co.*, 103 Mich. 330, 61 N. W. 514, to support his contention that it was the province of the jury to determine whether or not the deceased was guilty of contributory negligence in attempting to cross the railroad track without looking or listening when the electric bell was not ringing. The supreme court of Michigan there said that the question of contributory negligence should have been given to the jury, and reversed a judgment for the defendant because it was not given. A dissenting opinion in that case argues that the court should have directed a verdict for the defendant. *Wabash R. Co. v. McNown*, 53 Ind. App. 116, 99 N. E. 126, supports the majority opinion in the Tobias case, *supra*. We think the better rule is that the failure of an electric bell to ring does not relieve one about to cross a railroad track of the imperative duty to look and listen before crossing. If he fails to do so, he is guilty of such contributory negligence as will prevent his recovery for any injuries sustained, and there is nothing to submit to the jury.

It has been held that it is the positive duty of the driver of an automobile to stop, look and listen before crossing railroad tracks. (*A. C. L. R. R. Co. v. Weir*, 63 Fla. 69, 58 South. 641, 41 L. R. A., n. s., 307; *Craig, Appellant, v. Penna. R. R. Co.*, 243 Pa. St. 455, 90 Atl. 135; *Earle, Appellant, v. Phila. & R. Ry. Co.*, 248 Pa. St. 193, 93 Atl. 1001; *Brommer v. Pennsylvania R. Co.*, 179 Fed. 577, 29 L. R. A., n. s., 924; *New York Cent. & H. R. R. Co. v. Maidment*, 168 Fed. 21, 21 L. R. A, n. s., 794; *Bason v. Ala. G. S. R. R. Co.*, 179 Ala. 299, 60 South. 922; 2 R. C. L. 1206.) On the other hand, it has been held that the driver of an automobile is not under all circumstances as a matter of law required to stop before crossing a railroad track. (*Dickinson v. Erie Railroad Co.*, 81 N. J. Law. 464, 81 Atl. 104, 37 L. R. A., n. s., 150; *Pendroy v. Great Northern Ry. Co.*, 17 N. Dak. 433, 117 N. W. 531; *Hull v. Seattle, Renton & Southern R. Co.*, 60 Wash. 162, 110 Pac. 804; 2 R. C. L. 1206.) This state follows the rule last stated. (*Denton v. Railway Co.*, 90 Kan. 51, 56, 133 Pac. 558.)

(See, also, *A. T. & S. F. Rld. Co. v. Hague*, 54 Kan. 284, 38 Pac. 257; *C. R. I. & P. Rly. Co. v. Williams*, 56 Kan. 333, 43

Pac. 246; *C. R. I. & P. Rly. Co. v. Hinds,* 56 Kan. 758, 762, 44 Pac. 993; *Railroad Co. v. Powers,* 58 Kan. 544, 550, 50 Pac. 452; *Railroad Co. v. Holland,* 60 Kan. 209, 216, 56 Pac. 6; *Railroad Co. v. Willey,* 60 Kan. 819, 822, 58 Pac. 472; *Johnson v. Railroad Co.,* 80 Kan. 456, 461, 103 Pac. 90.)

More than a dozen times this court has said that a traveler must look and listen for approaching trains before attempting to cross railroad tracks, and that if he fails to do so and is injured in consequence thereof, damages can not be recovered for such injury. (*L. & G. Rld. Co. v. Rice,* 10 Kan. 426; *U. P. Rly. Co. v. Adams,* 33 Kan. 427, 6 Pac. 529; *Clark v. Mo. Pac. Rly. Co.,* 35 Kan. 350, 355, 11 Pac. 134; *A. T. & S. F. Rld. Co. v. Townsend,* 39 Kan. 115, 119, 17 Pac. 804; *A. T. & S. F. Rld. Co. v. Priest,* 50 Kan. 16, 22, 31 Pac. 674; *Roach v. St. J. & I. Rld. Co.,* 55 Kan. 654, 658, 41 Pac. 964; *Railroad Co. v. Willey,* 60 Kan. 819, 58 Pac. 472; *Burns v. Railway Co.,* 66 Kan. 188, 191, 71 Pac. 244; *Railway Co. v. Ryan,* 69 Kan. 538, 540, 77 Pac. 267; *Hoopes v. Railway Co.,* 72 Kan. 422, 83 Pac. 987; *Railroad Co. v. Entsminger,* 76 Kan. 746, 749, 92 Pac. 1095; *Railway Co. v. Wheeler,* 80 Kan. 187, 191, 101 Pac. 1001; *Beech v. Railway Co.,* 85 Kan. 90, 116 Pac. 213; *Adams v. Railway Co.,* 93 Kan. 475, 144 Pac. 999; *Butts v. Railway Co.,* 94 Kan. 328, 146 Pac. 1142.) The driver of an automobile is under the same or a more imperative duty to look and listen before crossing railroad tracks. (*Gage v. Railway Co.,* 91 Kan. 253, 137 Pac. 938; *Northern Pac. Ry. Co. v. Tripp,* 220 Fed. 286; *Horandt v. Central Railroad Co.,* 78 N. J. Law, 190, 73 Atl. 93; *Elder v. The P., C., C. & St. L. Ry. Co.,* 186 Ill. App. 199; *Glick v. Cumb. & W. Elec. Ry. Co.,* 124 Md. 308, 92 Atl. 778; *Fort Wayne, etc., Traction Co. v. Schoeff,* 56 Ind. App. 540, 105 N. E. 924; *Allison v. Chicago, Milwaukee & S. P. R. Co.,* 83 Wash. 591, 145 Pac. 608.) The rule requiring one about to cross a railroad track to look and listen applies in a city as well as in the country. (*Burns v. Railway Co.,* 66 Kan. 188, 191, 71 Pac. 244; *Railway Co. v. Ryan,* 69 Kan. 538, 540, 77 Pac. 267; *Northern Pac. Ry. Co. v. Tripp,* supra; *Horandt v. Central Railroad Co.,* supra; *Elder v. The P., C., C. & St. L. Ry. Co.,* supra; *Allison v. Chicago, Milwaukee & S. P. R. Co.,* 83 Wash. 591, 145 Pac. 608.)

The deceased was guilty of contributory negligence such as

will prevent the plaintiff's recovery in this action, unless those in charge of the engine were guilty of wantonness.

2. The plaintiff contends that the deceased lost his life through the wanton conduct of those in charge of the engine. This contention is based on the failure of the enginemen to ring the bell and sound the whistle and on the high rate of speed at which the train was run through Valley Center. Against this the jury found that the service application of air was applied and the steam cut off one quarter of a mile before reaching the crossing, and that the enginemen supposed the electric bell at the crossing was ringing.

Although contributory negligence on the part of the deceased will excuse the defendant for its negligence, yet wantonness on the part of the defendant will avoid the deceased's contributory negligence and render the defendant liable. (*K. C. Rly. Co. v. Fitzsimmons,* 22 Kan. 686; *U. P. Rly. Co. v. Adams,* 33 Kan. 427, 429, 6 Pac. 529; *K. C. Ft. S. & G. Rld. Co. v. Kelly,* 36 Kan. 655, 14 Pac. 172; *U. P. Rly. Co. v. Dunden,* 37 Kan. 1, 14 Pac. 501; *K. P. Rly. Co. v. Whipple,* 39 Kan. 531, 540, 18 Pac. 730; *Tennis v. Rapid Transit Rly. Co.,* 45 Kan. 503, 25 Pac. 876; *A. T. & S. F. Rld. Co. v. Todd,* 54 Kan. 551, 559, 38 Pac. 804; *Railway Co. v. Cooper,* 57 Kan. 185, 190, 45 Pac. 587; *Cummings v. Railroad Co.,* 68 Kan. 218, 220, 74 Pac. 1104; *Tempfer v. Street Railway Co.,* 89 Kan. 374, 379, 131 Pac. 592.) Negligence is not presumed. It must be proved. (*Mo. P. Rly. Co. v. Haley, Adm'r, etc.,* 25 Kan. 35; *Jackson v. K. C. L. & S. K. Rld. Co.,* 31 Kan. 761, 3 Pac. 501; *Railroad Co. v. Tindall,* 57 Kan. 719, 48 Pac. 12; *Byland v. Powder Co.,* 93 Kan. 288, 294, 144 Pac. 282; *Willis v. Skinner,* 94 Kan. 621, 634, 147 Pac. 60; *U. P. Rly. Co. v. Mahaffy,* 4 Kan. App. 88, 46 Pac. 187.) Wantonness, like negligence, is not presumed but must be proved. (*Railway Co. v. Lacy,* 78 Kan. 622, 626, 97 Pac. 1025.) This court has often said that whether negligence in a particular case is shown is ordinarily a question for the jury, but when the facts are undisputed or are definitely found by the jury and only one conclusion can be drawn therefrom, it becomes a question of law for the court. (*Kansas Pac. Ry. Co. v. Butts,* 7 Kan. 308; *Wade v. Electric Co.,* 94 Kan. 462, 469, 147 Pac. 63, and numerous cases intervening.) The same rule applies when wantonness is the issue.

(*Campbell v. K. C. Ft. S. & M. Rld. Co.,* 55 Kan. 536, 543, 40 Pac. 997; *Railway Co. v. Cooper,* 57 Kan. 185, 191, 45 Pac. 587; *Railway Co. v. Lacy,* supra; *Gilbert v. Railway Co.,* 91 Kan. 711, 139 Pac. 380.) This court has reversed judgments in several cases because there was not sufficient evidence to justify the finding of the jury that the injury was caused by wantonness. (*C. B. U. P. Rld. Co. v. Henigh, Adm'r,* 23 Kan. 347, 359; *K. P. Rly. Co. v. Whipple,* 39 Kan. 531, 18 Pac. 730; *K. C. Ft. S. & G. Rld. Co. v. Kier,* 41 Kan. 671, 21 Pac. 770; *Railway Co. v. Cooper,* 57 Kan. 185, 191, 45 Pac. 587; *Railway Co. v. Lacy,* 78 Kan. 622, 97 Pac. 1025; *Gilbert v. Railway Co.,* supra; *McCullough v. Railway Co.,* 94 Kan. 349, 146 Pac. 1005.) This court has sustained a judgment where the trial court denied relief to the plaintiff for the reason that the evidence was not sufficient to establish wantonness. (*Campbell v. K. C. Ft. S. & M. Rld. Co.,* supra.)

In *Railway Co. v. Lacy,* supra, this court said:

"To constitute wilful negligence there must be a design, purpose or intent to do wrong or to cause the injury." (p. 629.)

"Reckless disregard of security, wantonness or other equivalent of bad faith and the wilful or malicious disposition to injure all involve something else than negligence." (*Railway Co. v. Walters,* 78 Kan. 39, 41, 96 Pac. 346.)

"The conduct of the employees in charge of an engine in failing to take measures for the protection of a person upon the track can be characterized as 'wanton,' in the sense in which that word is used in this connection, only when they actually know of his presence, or when the situation is substantially the same as though they had such knowledge—when such knowledge may fairly be imputed to them. It is not enough for that purpose that the exercise of ordinary diligence would have advised them of the fact, for their omission of duty in that regard amounts only to negligence. Nor is it enough that they know some one might be in the place of danger; the probability must be so great—its obviousness to the employees so insistent—that they must be deemed to realize the likelihood that a catastrophe is imminent and yet to omit reasonable effort to prevent it because indifferent to the consequences." (*Railway Co. v. Baker,* 79 Kan. 183, 187, 98 Pac. 804.)

In *U. P. Rly. Co. v. Mitchell,* 56 Kan. 324, 43 Pac. 244, this court approved an instruction which defined reckless conduct as an indifference to the rights of others, an indifference whether wrong is done or not; and which told the jury that the defendant could be held liable only for injuries inflicted

which were wilful, wanton, or malicious, or which were so grossly negligent as to amount to wantonness. Many of our courts hold that wantonness precluding a defense of contributory negligence can not be predicated on the omission of a duty before the discovery of a person in a position of peril on a railroad track. (Note, 21 L. R. A., n. s., 427, 442.)

Why did the enginemen make the service application of air? Why did they cut off the steam when a quarter of a mile away from the crossing? What effect shall be given to their supposition that the electric bell was ringing? The only answer to these questions is that they did consider the possibility of persons attempting to cross the railroad track, and had regard for their safety.

Taking into consideration the facts found by the jury in this case—the failure of the enginemen to ring the bell and sound the whistle, the rate of speed at which they were accustomed to go through Valley Center, the rate at which they went through on the day of the accident, the application of the air, the cutting off of steam, the supposition that the electric bell was ringing, and the conditions existing at the crossing— we are compelled to say as a matter of law that the enginemen were not guilty of wantonness. *Gilbert v. Railway Co.*, 91 Kan. 711, 139 Pac. 380, supports this conclusion.

The judgment is reversed with direction to the trial court to enter judgment for the defendant.